**In the Matter of the tax indebtedness of James F. GERWIG.**

**No. CV 78–1377–RMT.**

United States District Court, C. D. California.

Oct. 31, 1978.

Andrea Sheridan Ordin, U. S. Atty., Charles H. Magnuson, Asst. U. S. Atty., Chief, Tax Div., William J. James, Asst. U. S. Atty., Los Angeles, Cal., for United States.

MEMORANDUM

TAKASUGI, District Judge.

The United States Attorney has made an *ex parte* application to this court

for an order authorizing entry into taxpayer's premises by Internal Revenue Service (IRS) agents to seize property therein in satisfaction of allegedly unpaid federal taxes. Pursuant to 26 U.S.C. § 7402(a), this court has jurisdiction to issue such an order.[1]

According to the affidavit of the revenue officer, filed with the application, an assessment of tax, pursuant to I.R.C. §§ 6201, 6202 and 6303, has been made against the taxpayer. The type of tax involved is Withholding, Federal Insurance Contributions Act (WT:FICA). The affidavit states that, pursuant to I.R.C. §§ 6303 and 6321, demand for payment has been made on two occasions and that the taxpayer has refused to pay the full amount of the tax assessed within ten (10) days of the notice and demand and that this neglect and refusal continues.

By reason of the assessment, a lien has arisen on all property and rights to property of the taxpayer as prescribed by I.R.C. §§ 6321 and 6322. A levy may now be made on the property.

The *ex parte* procedure used herein is without notice to the taxpayer. While a prompt post-seizure remedy prior to sale is provided for in 26 U.S.C. §§ 6337 and 7426, the invasion of the right to privacy, once it has occurred, cannot be so remedied.

■ Nevertheless, this court, with some reluctance, will permit an *ex parte*, unnoticed proceeding in light of the guidelines hereinafter set forth, the collection and assessment procedures utilized by the IRS, and the policy factors involved. This court, in the case at bar, has established guidelines with which the IRS must comply and which will hopefully eliminate the unwarranted intrusions into the privacy interests of the taxpayer. Additionally, the assessment and collection procedures of the IRS in regards to the type of tax in question provide notice to the taxpayer that he or she is delinquent in his or her taxes[2] from which the taxpayer will recognize a reasonable expectation that action possibly will be taken by the IRS if payment is not forthcoming. Furthermore, an unnoticed *ex parte* proceeding is consistent with "[t]he policies favoring expeditious tax enforcement procedures," *United States v. First National City Bank*, 568 F.2d 853, 858 (2nd Cir. 1977), as well as the fact that search warrants traditionally are issued without notice without violating due process.[3]

---

1. § 7402. Jurisdiction of district courts.
    (a) To issue orders, processes, and judgments. —The district courts of the United States at the instance of the United States shall have such jurisdiction to make and issue in civil actions, writs and orders of injunction, and of *ne exeat republica*, orders appointing receivers, and such other orders and processes, and to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws. The remedies hereby provided are in addition to and not exclusive of any and all other remedies of the United States in such courts or otherwise to enforce such laws.
    The language of § 7402(a) is clear and encompassing. *United States v. First National City Bank*, 568 F.2d 853, 855 (2nd Cir. 1977). While not specifically addressing the jurisdiction of the district court to grant a warrant upon a proper application, the Court in *G. M. Leasing Corp. v. United States*, 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977), raised no hint of a jurisdictional problem. Therefore, it is concluded that jurisdiction would lie in this court pursuant to § 7402(a). *In the Matter of Carlson*, 580 F.2d 1365 (10th Cir. 1978).

2. Under the general assessment and collection provisions of §§ 6201–6203 and §§ 6302–6303, an assessment is made and notice is given to the taxpayer that his or her taxes are delinquent. Thereafter, pursuant to § 6331, the taxpayer is given ten days to pay, and if no payment is made the IRS proceeds to levy on the taxpayer's property after authorization by a court of an *ex parte* application. It is ironic that under other IRS code sections a taxpayer whose payment is specifically found to be in jeopardy has more procedural protection than the taxpayer named herein, i. e., under the jeopardy assessment procedures, the taxpayer can obtain a stay of any collection or levy on his or her property by posting a bond. 26 U.S.C. § 6863(a).

3. Since the United States Attorney proceeded in this matter *ex parte*, without notice to the taxpayer, the normal adversary system was not at work. This places on the Government an obligation to inform the court of the current state of statutory and decisional (even non-controlling) law relating to the issues presented in the matter.
    Yet, when the instant application was filed, the points and authorities attached thereto did

Prior to the decision of the Supreme Court in *G. M. Leasing Corp. v. United States*, 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977), the practice of the IRS was to have its agents, under administrative sanction, levy upon the taxpayer's property by service of notice of levy following entry and to then physically seize the property. In *G. M. Leasing* the Court held that, under the Fourth Amendment, a search warrant was required when the property to be seized is "situated on private premises to which access is not otherwise available for the seizing officer." 429 U.S. at 354, 97 S.Ct. at 630. It is under this mandate that the IRS applies for what it captions an "Order for Entry on Premises to Effect Levy" and which should be properly labeled an application for a search warrant.

The issues now posed before this court are: (1) what standard of probable cause must be met in order for a warrant to issue, and (2) whether that standard has been met in the case at bar.

## PROBABLE CAUSE

### A. *Necessary Showing.*

A Tenth Circuit decision, *In the Matter of Carlson*, 580 F.2d 1365 (10th Cir. 1978), interpreted the Supreme Court decision in *G. M. Leasing* as requiring an administrative warrant as opposed to a search warrant, and, therefore, based its decision on administrative inspection decisions (for example, *Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) and *Marshall v. Barlow's Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978)). The *Carlson* court held that such warrants "in conjunction with administrative proceedings cannot

not alert the court to the fact that there was a serious difference in the federal courts as to all of the issues discussed in this Memorandum. The Tenth Circuit had not yet reversed *Carlson*, *supra*. There are no controlling decisions in the Ninth Circuit on these issues. However, this court's attention was not drawn to the *Carlson* case or the controversies therein. Only the court's independent research revealed the divergence of views and the unsettled issues.

be equated with the 'probable cause' requirement of the 'traditional' Fourth Amendment search in the criminal law setting. [Citations]." 580 F.2d 1381. It is evident that the court was interpreting *G. M. Leasing* as requiring the lesser standard of probable cause usually associated with administrative warrants.

With due respect, this court feels that the Supreme Court in *G. M. Leasing* spoke of *search warrants*, not *administrative warrants.*

In *G. M. Leasing*, the existence of probable cause was not in issue. The Court accepted certain findings as determined by the Court of Appeals, which findings stated the Court, "necessarily establish[ed] probable cause to believe that assets held by petitioner were properly subject to seizure in satisfaction of the assessments." 429 U.S. at 351, 97 S.Ct. at 628. There being probable cause for the search and seizure, the question before the court was whether warrants were required to "make 'reasonable' . . . the entry into and seizure of goods in the cottage." *Id.*

The Court, in focusing on the reasonableness of the warrantless entry and seizure of property in the office of petitioner corporation, recognized the different standard of reasonableness used with regards to a business; that "by its special nature and voluntary existence, [a business] may open itself to intrusions that would not be permissible in a purely private context." *Id.* at 353, 97 S.Ct. at 629. But the Court went on to explain how this lower level of privacy is inapplicable:

In the present case, however, the intrusion into petitioner's privacy was not based on the nature of its business, its license, or any regulation of its activities.

In the future, this court expects, attached to any application presented in a non-adversarial context, points and authorities thoroughly apprising the court of the current status of the issues presented, with divergent points of view exposed. Of course, the Government may then strongly urge its viewpoint and analysis. While this is an added burden on the Government, it is a useful, albeit small, step towards resolving one of the inherent weaknesses in non-adversarial hearings.

Rather, the intrusion is claimed to be justified on the ground that petitioner's assets were seizable to satisfy tax assessments. This involves nothing more than the normal enforcement of the tax laws, and we find no justification for treating petitioner differently in these circumstances simply because it is a corporation.

*Id.* at 354, 97 S.Ct. at 629.

This court is guided by the above distinction made by the Supreme Court. Here, as in *G. M. Leasing*, the nature of petitioner's business may open it to intrusions relevant to its business nature. But, the lower level of expected privacy is inapplicable here, where the question is regarding an intrusion, not related to the business, but rather to enforce tax laws.

The probable cause required in a tax case was recently compared to that required in a criminal case by the Ninth Circuit:

We start by observing that just as police need probable cause to believe that evidence sought is to be found in the area to be searched and that such evidence relates to a crime, so, too, *the Internal Revenue Service needs probable cause at the time assets are initially seized to connect those assets to a taxpayer with outstanding taxes due.*

*Flores v. United States,* 551 F.2d 1169, 1174–1175 (9th Cir. 1977) (footnote omitted) (emphasis added).

■ The courts must be concerned as to whether the assets seized belong in some way to the taxpayer, i. e., whether he or she has an interest in it. The courts cannot be used to rubber-stamp applications for search warrants that lack sufficient specificity to enable the judge to make an independent determination of whether probable cause exists to believe that:

(1) An assessment of tax has been made against the taxpayer;

(2) Notice and demand have been properly made;

(3) The taxpayer has neglected or refused to pay said assessment within ten days after notice and demand; and

(4) Property, subject to seizure, presently exists at the premises sought to be searched and that said property either belongs to the taxpayer or is property upon which a lien exists for the payment of the taxes.

### B. *The IRS Application.*

■ The application and affidavit of the revenue officer submitted in this matter lack the requisite specificity.[4] The three-page affidavit [see appendix A] in question is replete with conclusionary statements concerning the points set out above. No acceptable fact is offered as to what the nature of the notice and demand were. No support is offered to the conclusions that the "taxpayer is doing business at the premises." The revenue officer states that he obtained information that the taxpayer has certain assets at the premises: "Liquor Licenses (2), Cash Register Contents, Furnishings, Fixtures, Liquor Inventories." He further states that he "obtained this information from personal visits and observations in addition to receiving verification of the liquor licenses from the Alcoholic Beverage Control of San Bernardino, California." Missing are the answers to questions such as: When did visits occur?; What was the nature of the visits?; Who at the Alcoholic Beverage Control verified exactly what? Yet the district court is expected to independently determine that probable cause exists to believe that assets subject to seizure, properly connected to the taxpayer, are *presently* at the site sought to be searched.

Additionally, while the Court in *G. M. Leasing* spoke to the need for probable cause to search where privacy rights may be invaded, but not to seize, the district court cannot, of course, allow IRS agents total, uncontrolled discretion, once validly

---

4. This court earlier informed the Government that it felt the original affidavit lacked necessary specificity. Subsequently, an amended affidavit of revenue officer was submitted, which is identical in all respects to the first affidavit except for the amount owing being substantially reduced.

inside the premises pursuant to a warrant, to rummage everywhere in search of seizable items. Thus, while clearly it would be too burdensome to require, in all cases, that the IRS list specifically what they plan to seize and be limited solely to that list, some restraint is necessary. Obviously there is a difference between seizing the taxpayer's liquor licenses, desks, or chairs and seizing his filing cabinet or private desk which may contain private papers (or perhaps searching the papers to see if other seizable items exist). To do the latter would require an additional showing. Thus, without an additional specific showing, the court's warrant must contain within it certain limitations protecting the taxpayer's privacy from unnecessary intrusions beyond those needed to allow the IRS agents enough discretion to seize. The area to be searched must be adequately described so that the court can determine if any privacy right exists.

The affidavit and proposed order on file are inadequate. The Government may file a new affidavit and proposed order consistent with the standard enunciated in this decision.

## APPENDIX A

## AMENDED AFFIDAVIT OF REVENUE OFFICER

Revenue Officer ROBERT L. PATTERSON, having been first duly sworn, states as follows:

1. I am a revenue officer employed in the Collection Division of the Office of the District Director, Internal Revenue Service, Los Angeles, California. As a revenue officer, I have the duty and authority to collect federal taxes by seizure and sale under the provisions of I.R.C. § 6331.

2. Pursuant to I.R.C. §§ 6201, 6202, and 6303, an assessment of tax (plus penalty and interest to the extent applicable) has been made against the above-captioned taxpayer as follows:

| Year or Period | Assessment Date | Type of Tax | Amount |
|---|---|---|---|
| 4th Qtr '77 | 03–28–78 | Withholding, Federal Insurance Contributions Act (WT:FICA) | $10,853.64 |

The total amount assessed for said period was $10,853.64; notice and demand for payment pursuant to I.R.C. §§ 6303 and 6321 was made on March 29, 1978 and April 10, 1978.

3. The said taxpayer has neglected or refused to pay the full amount of the tax assessed within ten (10) days after notice and demand and this neglect or refusal continues.

4. There is now due, owing and unpaid with respect to such tax, penalty and interest a total amount of $3,948.09 plus statutory additions.

5. By reason of the assessment, a lien has arisen on all property and rights to property of said taxpayer as prescribed by I.R.C. §§ 6321 and 6322.

6. By reason of the taxpayer's neglect and failure to pay such unpaid tax within ten (10) days after notice and demand, a levy may be made on all property and rights to property belonging to the taxpayer or to which the federal tax lien attaches.

7. The taxpayer is doing business at the premises located at 1050 E. Main Street and 103 E. Main, Barstow, California. The nature of the business of taxpayer is that of restaurant and cocktail bar.

The said taxpayer continues to fail to comply with the tax laws in that taxpayer untimely filed fourth quarter 1977 tax returns and has failed to make the required quarterly deposit of taxes withheld from wages for the first quarter 1978.

I have information that the taxpayer has the following types of assets at the above premises: Liquor Licenses (2), Cash Register Contents, Furnishings, Fixtures, Liquor Inventories.

I have obtained this information from personal visits and observation in addition to receiving verification of the liquor licenses from the Alcoholic Beverage Control of San Bernardino, California.

454

I have attempted to obtain consent to seizure of the above premises under I.R.C. § 6331 from taxpayer on March 29, 1978 and again on April 10, 1978. Said taxpayer refused to consent to seizure on both occasions.

(s) Robert L. Patterson
Revenue Officer