UNITED STATES of America,
Plaintiff-Appellee,

v.

Armen B. CONDO,
Defendant-Appellant.

No. 85–5106.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 5, 1985.

Decided Feb. 19, 1986.

Wayne R. Young, Santa Monica, Cal., for defendant-appellant.

Before FLETCHER, PREGERSON and CANBY, Circuit Judges.

FLETCHER, Circuit Judge:

Armen Condo appeals from his conviction for illegal possession of firearms by a felon (18 U.S.C.App. § 1202(a)(1) (1982)). The appeal turns on whether evidence seized pursuant to an IRS entry warrant should be suppressed. We affirm.

## FACTS

In earlier proceedings, Condo was convicted of 18 felony counts of mail fraud, 14 felony counts of advising and assisting in the preparation and submission of fraudulent documents, and 9 misdemeanor counts of aiding and abetting tax fraud. The convictions arose from his involvement in the tax protest group "Your Heritage Protection Association" (YHPA). Condo was both a founder and director of the group, which expounds the theory that because United States currency is not backed by gold or silver, it is not taxable income.

Condo was sentenced to prison on the convictions, but remained free on bail while he appealed. One of the conditions of his release on bail was that he refrain from advising others to claim excessive withholding exemptions or not to pay taxes. The government moved to revoke defendant's bail on the ground that he had violated this condition. The district court denied the motion without explanation.

A few weeks later, the IRS sent Condo notice that he was being assessed a penalty of $1,474,000 for aiding and abetting understatement of tax liability. It was alleged that Condo had helped others understate their tax liability on 1,474 occasions during the period he was free on bail. He was penalized $1,000 for each count. The government then filed a tax lien for the $1,474,000. Condo wrote to the IRS deny-

Jeffrey Modisett, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

ing liability for the assessment. He sent a second letter challenging the constitutionality of the statute under which the penalty was assessed. One month after the original notice was sent, the IRS filed a demand letter for payment of the penalty. Condo challenged the penalty assessment by filing a complaint for declaratory and injunctive relief.[1]

About two months later, the government filed an *ex parte* application for an order authorizing entry onto Condo's residential and business premises to seize property subject to levy to satisfy the assessed penalty. IRS Revenue Officer Janice Dean filed a declaration in support of the application.

The declaration stated that Dean had reviewed Condo's file and found that the penalty had been assessed, that notice and demand upon Condo had been made, and that he had refused to pay. Dean knew of a trailer parked outside Condo's home that she believed belonged to him. She believed that Condo owned assets at his business premises.

The declaration also stated that the IRS wished to enter Condo's residence in order to insure the safety of agents seizing the trailer. It set forth reasons why the IRS believed there might be violence in response to the seizure. Dean had read the files on YHPA and determined that the YHPA was an alter ego of Condo. There was a sign posted at Condo's business premises that said "Notice to Public Servants.... Survivors Will Be Prosecuted." The IRS had information that YHPA had a rapid communications network to enable its members to contact each other quickly. There was also a newspaper report that referred to a landholding of the protest group as an armed camp. The declaration did not mention Condo's pending suit regarding the constitutionality of the penalty or the denial of the government's motion to revoke Condo's bail.

The district court issued the requested entry order on the basis of this declaration

and government agents set out to execute it. At Condo's residence, IRS agents accompanied by two local police officers showed the entry order to Condo. When he refused to allow them entry, they forced their way in. One of the agents asked Condo if he had weapons in the house. He replied that he did, but he did not know where they were. His wife told them there were weapons stored in a safe in the garage.

The agents demanded that Condo open the safe. He refused until he was told that a locksmith would be called if he did not open it. Inside the safe, the agents found numerous boxes of ammunition, at least five guns, and some silver dollars. They also found an unloaded shotgun behind the kitchen door. The agents seized all the weapons.

Condo was indicted for being a felon in possession of firearms. A suppression hearing was held at which Agent Dean testified she believed the entry was necessary to protect the safety of the IRS officers. She admitted there was no evidence of any specific incidents of violence involving YHPA members. The district court described the government's conduct as "unseemly and unflattering" but upheld the warrant and its execution.

Trial was by stipulated facts. Condo was found guilty, and sentenced to one year and one day in prison to run concurrently with his tax evasion sentence. Condo appeals the order denying the motion to suppress.

## DISCUSSION

### I. PROBABLE CAUSE NECESSARY TO OBTAIN AN IRS ENTRY WARRANT

In *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977), the Supreme Court held that the IRS needed a warrant to enter private property to make seizures in satisfaction of

---

**1.** Condo's civil suit challenging the penalty assessment was dismissed without prejudice some

time after the search that gave rise to the present appeal.

income tax assessments. The Court began its analysis by finding "probable cause" for the entry from a valid assessment and a showing that the property searched belonged to a business that was the taxpayer's alter ego. 429 U.S. at 351, 97 S.Ct. at 627. In this way, it implicitly held that a showing of probable cause of some sort is necessary to obtain an IRS entry warrant. We have explicitly stated that to get such a warrant, the IRS must have probable cause to connect the assets seized to the delinquent taxpayer. *Flores v. United States,* 551 F.2d 1169, 1174–75 (9th Cir.1977).

The parties dispute whether this showing should be similar to that necessary for a search for evidence of crime or that required for an "administrative search." *See Camara v. Municipal Court,* 387 U.S. 523, 538, 87 S.Ct. 1727, 1735, 18 L.Ed.2d 930 (1967). The government does not dispute that the IRS must show an assessment, a demand, a refusal to pay and a likelihood of finding property of the taxpayer at the address where the search is to take place. It does dispute how much specificity is required as to the area to be searched, and as to the description of the property that is present and subject to seizure.

■ Judge Takasugi in *In re Gerwig,* 461 F.Supp. 449 (C.D.Cal.1978), thoughtfully discusses the policies and tensions inherent in satisfying both the needs of efficient tax collection and the privacy interests of citizens. He notes that the Supreme Court in *G.M. Leasing* spoke of search warrants, not administrative warrants, and that our court in *Flores* compared the probable cause required in a criminal case to that required in a tax case. *See Flores,* 551 F.2d at 1174–75. He rejects the administrative warrant approach adopted by the Tenth Circuit, *see Matter of Carlson,* 580 F.2d 1365 (10th Cir.1978), contrasting the lower level of privacy expectation of a regulated or licensed business whose activities are subject to inspection with the normal expectations of privacy of a taxpayer against whom the government makes claim for taxes. We agree with *Gerwig* that the search warrant approach is appropriate. The IRS application must have sufficient

specificity to enable the judge to make an *independent determination* of whether probable cause exists and to prevent the agents from having uncontrolled discretion to rummage everywhere in search of seizable items once lawfully within the premises. *Gerwig,* 461 F.Supp. at 452–53.

In a practical vein, *Gerwig* acknowledges that it would be too burdensome to require in all cases a specific list of what the IRS plans to seize but

> [o]bviously there is a difference between seizing the taxpayer's liquor licenses, desks, or chairs and seizing his filing cabinet or private desk which may contain private papers (or perhaps searching the papers to see if other seizable items exist). To do the latter would require an additional showing.

*Id.* at 453. *Gerwig* properly stresses the need for restraints similar to those imposed on police executing search warrants, but in its approach also recognizes the purposes of the IRS entry warrant: to seize property in satisfaction of unpaid taxes, not to search out evidence.

The Supreme Court noted that

> one of the primary evils intended to be eliminated by the Fourth Amendment was the massive intrusion on privacy undertaken in the collection of taxes pursuant to general warrants and writs of assistance.

*G.M. Leasing,* 429 U.S. at 355, 97 S.Ct. at 630. *See generally,* Schnapper, *Unreasonable Searches and Seizures of Papers,* 71 Va.L.Rev. 869 (1985) (suggesting private papers deserve special treatment under the Fourth Amendment).

■ Condo apparently claims that the declaration in this case was insufficiently specific to provide probable cause for the entry warrant and therefore that the seizure of the weapons was improper. We disagree. The declaration stated that the agents intended to seize a specific piece of property, the trailer, and gave specific reasons to support the conclusion that it belonged to Condo. It adequately set forth reasons to believe the safety of agents might be endangered during the seizure, and thus supported a finding of probable

**1506**

cause to enter the residence. The agents' inquiry about the presence and location of weapons and their seizure of weapons was consistent with the purpose of the entry order. The agents must have considerable latitude in selecting the particular methods used to ensure their safety. We conclude that the declaration was adequate to support the entry order and that the seizure of the weapons was proper under the order.

## II. MATERIAL MISSTATEMENTS AND OMISSIONS

■■■ Condo asserts that the evidence of possession of the firearms must be suppressed because the declaration supporting the warrant contained material misstatements and omissions critical to the finding of probable cause. *See Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). A court reviewing an affidavit that contains misstatements

> should set the affidavit's false assertions to one side and then determine whether the affidavit's remaining content is still sufficient to establish probable cause. If the affidavit is not sufficient, the warrant must be voided and the fruits of the warrant suppressed.

*United States v. Ippolito*, 774 F.2d 1482, 1485 (9th Cir.1985) (citing *Franks*, 438 U.S. at 156, 98 S.Ct. at 2676). This analysis applies to omissions as well. *Id.* at 1486 n. 1. In the case of omissions, the declaration should be considered with the omitted truths included. *See id.* at 1487 n. 1. Condo asserts that three different omissions were material to a finding of probable cause. Materiality is a mixed question of law and fact and is reviewed *de novo. Id.* at 1484.

### A. The Civil Suit

■■■ Condo first claims that the IRS should have informed the magistrate issu-

ing the warrant of Condo's pending civil suit challenging the constitutionality of the penalty assessment and asking for injunctive relief. He claims that this information would have shown the magistrate that he did not refuse to pay the assessment, but rather challenged its validity. Because the IRS must show probable cause to believe that Condo refused to pay, he claims the failure to present this information invalidated the warrant.

This argument fails because the civil suit was an improper challenge to the penalty assessment. Ordinarily, taxpayers are prohibited from bringing suits to enjoin the assessment or collection of any tax and are limited in their redress to suits for refund. *Maxfield v. United States Postal Service*, 752 F.2d 433, 434 (9th Cir.1984). The only exception to this rule requires the taxpayer to demonstrate that the government could not possibly prevail in the suit. *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962); *Maxfield*, 752 F.2d at 434. Because Condo would not be able to make such a demonstration, this exception is not applicable to his civil suit.[2]

Under a section specifically devised for the type of penalty at issue in this case, 26 U.S.C. § 6703(c)(1) (1982), Condo also could have challenged the penalty assessment by paying 15% of the assessed penalty, rather than the whole amount, but he did not do so. Because his civil suit was not a valid challenge to the penalty assessment, it was not material to the government's showing that he refused to pay.

### B. The Bail Condition

■■■ The second claimed omission was the government's failure to reveal to the

---

**2.** Uncomfortable as one may be with IRS procedures that result in a penalty assessment of $1,474,000 against Condo, his claim surely fails the test that it is clear that under no circumstances could the government ultimately prevail taking the "most liberal view of the law and the facts" in the government's favor. *Enochs*, 370 U.S. at 7, 82 S.Ct. at 1129. The validity of Condo's claim—that his due process rights are

violated by the requirement that he pay almost a quarter of a million dollars in order to challenge the penalty assessment—is not before us. We assume he raises the issue in his declaratory judgment action questioning the constitutionality of the assessment and the requirements for challenging it. The issue before us is very narrow: were the alleged omissions material to a finding of probable cause?

magistrate that a federal judge had denied the government's motion to end Condo's release on bail. Condo asserts that this denial constituted a finding that he had not committed the acts for which he was penalized the $1,474,000, and that this finding is relevant to whether there was probable cause to believe the tax was owing.

The omission is immaterial for two reasons. First, as the government points out, the judge made no findings in regard to whether Condo had violated the conditions of his release; he merely denied the motion. Second, even if the penalty were ultimately determined to have been wrongly assessed, its collection would not be stayed because Condo had not paid 15% of the assessment when he challenged it. 26 U.S.C. § 6703(c)(1); *Thomas v. United States,* 755 F.2d 728, 729 (9th Cir.1985). Thus, this information was not material to the government's showing that the tax was owed.

*C. Need for Safety*

The third omission alleged by Condo is Dean's supposed failure to make clear that she was basing her statements about fears of violence on very little support. Normally, the question of safety will not be an issue in a hearing on probable cause for issuance of an IRS entry warrant. The primary concern of the judge usually is whether there is a likelihood that there are assets located on the premises to be searched that belong to a taxpayer and are subject to levy. *See G.M. Leasing Corp. v. United States,* 429 U.S. 338, 351, 97 S.Ct. 619, 627, 50 L.Ed.2d 530 (1977); *Flores v. United States,* 551 F.2d 1169, 1174–75 (9th Cir.1977); *Matter of Gerwig,* 461 F.Supp. 449, 452 (C.D.Cal.1978). In this case, however, the IRS alleged that because persons in the house had an overview of the trailer, the agents needed to enter the residence, not to seize property, but to ensure the safety of the agents seizing the trailer.

There was no information that any YHPA members had ever accosted or used violence against an IRS agent. The information about the "rapid-calling network"

and the "armed camp" was gleaned from one agent and one newspaper clipping. Condo's basic allegation is that if the declaration had included these facts, it would have been insufficient to establish probable cause to believe that IRS agents might be in danger if they seized the trailer without entering the house. We disagree.

Probable cause can be less than prima facie proof, but must be more than a mere suspicion. *United States v. 1982 Yukon Delta Houseboat,* 774 F.2d 1432, 1434 (9th Cir.1985). All that would be required in this case is a reasonable ground for belief that the agents would be in danger. *See United States v. $93,685.61 in United States Currency,* 730 F.2d 571, 572 (9th Cir.) (per curiam), *cert. denied,* —— U.S. ——, 105 S.Ct. 119, 83 L.Ed.2d 61 (1984). The evidence upon which this determination is based does not have to be admissible at trial, merely reliable. *See United States v. One 56–Foot Yacht Named Tehuna,* 702 F.2d 1276, 1283 (9th Cir.1983). The information in the declaration, viewed cumulatively, is enough to establish a reasonable belief that the agents' safety might be in jeopardy. The fact that no violence had occurred in the past and that some of the information came from only one agent and one clipping does not lessen the reasonableness of the belief. The claimed omissions, in our view, would not have led a reasonable judge to conclude that probable cause did not exist. We find that the omissions were not material.

### CONCLUSION

The declaration set out with sufficient specificity facts that establish probable cause for the entry of the residence and the seizure of the weapons. None of the alleged omissions are material to a showing of probable cause. Condo's suppression motion was properly denied.

AFFIRMED.