**In the Matter of the Tax Indebtedness Of James M. COPPOLA and Barbara Coppola.**

**No. CV–91–0919.**

United States District Court, E.D. New York.

Sept. 22, 1992.

Deborah S. Meland, Dept. of Justice, Tax Div., Washington, DC.

Janis Migliorise Peretore, Peretore & Peretore, Staten Island, NY, for Signa Financial Corp.

Michael I. Saltzman, Baker & McKenzie, New York City, for James and Barbara Coppola.

T. Gorman Reilly, Hahn & Hessen, New York City, for Barclay's Business.

Robert F. Hermann, Hermann & Bateman, Westfield, NJ, for Plaza Oldsmobile.

Williamson & Williamson, New York City.

Connie Moyer, New York City, for Apple Bank.

Cullen & Dykman, Garden City, NY.

Jerry Galvin, General Motors Acceptance Corp., Yonkers, NY, for General Motors Acceptance Corp.

Richard Kaplan, Diconza, Larocca & Dicunto, Brooklyn, NY, for George Regini.

Robert Abrams, Atty. Gen., Albany, NY.

O. Peter Sherwood, Corp. Counsel, Francis J. Henn, New York City.

## REPORT AND RECOMMENDATION

AZRACK, United States Magistrate Judge.

On March 15, 1991, the undersigned granted the Internal Revenue Service ("IRS"), a Writ of Entry for the purpose of seizing property to credit towards the tax liabilities of James and Barbara Coppola ("the taxpayers"). The seizure was effected on March 21, 1991, when various articles of personal property, including automobiles, boats, and construction equipment, were removed from the Brooklyn, New York location where the taxpayers resided. Thereafter, several interested parties appeared before the Honorable Jack B. Weinstein, United States District Judge, to challenge the seizure. Judge Weinstein directed the undersigned to hear the several claims and make recommendations for their disposition.

Currently before the Court is the taxpayers' own challenge to the validity of the initial Writ of Entry. In essence, the taxpayers argue that the Writ of Entry was "improvidently granted" by the undersigned on March 15, 1991. As a remedy, the taxpayers request an order that all property which was seized be returned to them. For the reasons set forth below, it is respectfully recommended that the taxpayers' application be denied.

## I. BACKGROUND TO THE APPLICATION

The taxpayers held controlling interests in a number of construction related corporations. Their underlying tax liabilities arose out of unpaid income and F.I.C.A. taxes withheld from the wages of employees of certain of those corporations, and also out of the employers' own contributions to social security with respect to the same withholdings. Based on the Coppolas' non-payment of the obligations, the IRS filed federal tax liens against the taxpayers themselves and against Coppola-

controlled corporations as the taxpayers' nominees.

The IRS applied to the undersigned for a Writ of Entry empowering them to seize assets in satisfaction of the taxpayers' unpaid liabilities. See 26 U.S.C. § 6331. That application was based on the Declaration of Revenue Officer Elsie McFarland ("McFarland Declaration").[1] In her Declaration, McFarland first reported pertinent facts regarding the underlying assessments and federal tax liens filed, as well as the extent of the liability then unpaid, $627,616.48. (McFarland Declaration ¶¶ 2–5.) She also averred that the requisite administrative collection efforts had been exhausted, and therefore, that a levy would be appropriate as against all property which belonged to the taxpayers, or in which the taxpayers had an interest. (Id. ¶¶ 3–6.)

McFarland also swore to the following facts:

–At the time McFarland prepared the declaration, the taxpayers resided at 6097 Strickland Avenue in Brooklyn, New York. That address, according to McFarland's personal observations, encompassed several buildings which spanned across four distinct, but adjacent, lots, (Id. ¶ 8);

–Those four lots, according to McFarland, were owned by three corporations, namely, Coppola Realty, Mill Harbor Development, and Amanda Realty. The taxpayers were the sole corporate officers and owners of these three entities, (Id. ¶ 8);

–The taxpayers lived in one of the buildings, and stored both personal and business assets throughout all of the buildings on the Strickland Avenue property, (Id. ¶ 9); and

–McFarland observed a number of different articles of personalty stored on the parcels, including construction equipment, cars, and boats. She was also informed by an entrant into the buildings that antique trucks and cars were stored there. Further, McFarland had reason to believe that these items belonged to the taxpayers directly, or to either J.J.'s Landing Company, Inc., J.A.J. Equipment Corporation, or J.M.C. Carz, Inc., all of which had been subject to nominee liens filed by the IRS, (Id. ¶¶ 10–11).

The taxpayers do not assert that the administrative procedures followed by the IRS in furtherance of the levy were either defective or inadequately satisfied. Nor do they contend, in the context of this application, that the underlying assessments were improperly made. Instead, the taxpayers' challenge to the Writ of Entry is based solely on their contention that it was issued upon less than probable cause.

## II. JURISDICTION AND SCOPE OF REVIEW

■ The IRS argued that the taxpayers do not have standing to challenge the validity of the Writ of Entry. At the outset, this Court notes that the IRS's argument has significant merit. The taxpayers, likely conscious that their standing was not unequivocally grounded in federal law, offered several alternative theories to justify their authority to bring this action. However, because the Court accepts the taxpayers' argument that this Court may review an interlocutory order that it has previously issued, the taxpayers' several theories will be examined only briefly.

■ First, the taxpayers directed the Court to Rule 41(e) of the Federal Rules of Criminal Procedure, and argued that this motion, like one under Rule 41(e), is for the return of property. Importantly, Rule 41(e) calls for property to be returned to a movant thereunder "on the ground that such person is entitled to lawful possession of the property." Additionally, the taxpayers invoked the quiet title provisions of 28 U.S.C. § 2410(a)(1). Standing under that section is based on the presumption that the petitioner himself is making a claim of ownership to the property for which title is to be quieted:

the taxpayer may bring an action under § 2410(a)(1) to challenge procedural ir-

**1.** The McFarland Declaration is reproduced at Appendix A.

regularities in the seizure and sale of *his property*....

*Kulawy v. United States*, 917 F.2d 729, 733 (2d Cir.1990) (emphasis added). Thus, on their face, and indeed consistent with the principle of common sense, actions under these provisions may be maintained only by claimants seeking to enforce their own rights in the property at issue. However, the taxpayers' stance for this application and, indeed, their posture throughout this litigation, has been at odds with that requirement. Simply put, in each challenge that the taxpayers have interposed they have maintained that they have no property rights whatsoever in the items seized from their Strickland Avenue residence and adjoining parcels. For that reason, this Court concludes that neither Rule 41(e) nor § 2410 empower the Coppolas to bring this proceeding.

■ The taxpayers then sought shelter under the wrongful levy provisions of 26 U.S.C. § 7426. However, "taxpayers owing money ... [do] not have standing under section 7426 to contest the seizures" of property in satisfaction of their delinquencies. *Lemaster v. United States*, 891 F.2d 115, 118 (6th Cir.1989); *accord In re Stoltz*, 745 F.Supp. 643, 647 (D.Colo.1990). This Court therefore rejects that argument as well. Then at the hearing in this matter, the taxpayers invoked *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977), for its proposition that seizure warrants to effect IRS levies must comport with the Fourth Amendment. Yet, that case does not support the taxpayers' standing to bring the instant application either. In *G.M. Leasing*, the Supreme Court was faced with facts superficially similar to those before this Court in that the IRS seized property allegedly owned by a corporation which the IRS contended was the alter ego of the taxpayer. However there the underlying lawsuit was not brought by the taxpayer.[2] Rather, the complaint in *G.M. Leasing* was filed by the corporation which made a claim to the seized property and demanded that the property be returned as the fruit of a wrongful levy. 429 U.S. at 345–46, 97 S.Ct. at 625.[3] Under the *G.M. Leasing* theory as well, the Court concludes that the taxpayers' steadfast denial that they hold any rights in the seized personal property is fatal to their contention that they have standing to demand the return of that property.

■ Despite the deficiencies highlighted above, the Court will hear this application. This and every court is vested with the

---

**2.** The Court by no means ignores any Fourth Amendment violation which the taxpayers might have suffered as a result of the revenue agents' conduct. In that light the taxpayers might wish to institute a civil action for money damages based on any such constitutional violations, if the law and the facts justify their doing so. *See G.M. Leasing*, 429 U.S. at 359, 97 S.Ct. at 632; *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 395–97, 91 S.Ct. 1999, 2004–05, 29 L.Ed.2d 619 (1971). However, the taxpayers here ask for the return of the specific items seized by the agents, not for money damages. The fact of a constitutional violation does not entitle the taxpayers to a windfall, which would result by granting them ownership rights in property which they claim that they did not own prior to its seizure.

**3.** When pressed at the hearing regarding their standing, the taxpayers often reminded the Court that Mr. John Rosatti and Barclays Business Credit, Inc., have both filed claims to certain of the items seized. The Court is certainly aware of that fact, and the claims of those third parties are pending before this Court as well. However, at the hearing in the instant proceeding brought by the taxpayers to challenge "the propriety of the Writ of Entry," counsel for none of the third-party claimants either addressed the Court or made submissions on behalf of their clients. This Court therefore fails to see how the existence of these third-party claims gives the taxpayers standing to challenge the seizure.

Furthermore, at the hearing the taxpayers' counsel informed the Court that he represented J.A.J. Equipment Corporation as well. J.A.J. was a Coppola-controlled entity which allegedly owned certain of the articles seized and which the government contends is an alter ego of the taxpayers. However, Judge Weinstein directed that all third parties claiming an interest in the seized property preserve their rights by notifying the District Court, and he set a deadline for their doing so that had long since passed when this proceeding was heard. Although Rosatti and Barclays both complied with Judge Weinstein's order, no formal claim was ever filed by J.A.J. Thus, the Court does not credit counsel's eleventh-hour attempt to enforce the rights of J.A.J.

434

"inherent power ... to reconsider interlocutory orders prior to the entry of final judgment." *Oliner v. McBride's Industries, Inc.,* 102 F.R.D. 561 n. 1 (S.D.N.Y. 1984) (citing 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2852, at 145 (1973 & Supp.1984)); *see also A & A Sign Company v. Maughan,* 419 F.2d 1152, 1155 (9th Cir.1969); *Nakhleh v. Chemical Constr. Corp.,* 366 F.Supp. 1221, 1223 (S.D.N.Y.1973). The taxpayers will be heard on that basis. And because the taxpayers have couched their application as requesting the Court to review its initial order, they have limited their application accordingly. The taxpayers ask simply that the Court reconsider its *initial* decision to grant the Writ of Entry pursuant to the declaration of Officer McFarland. Specifically, they urge this Court to further scrutinize its initial decision in light of the post-seizure arguments that they have proffered, as well as additional facts which they have revealed to the Court in support of their application. Doing so, they contend, will convince this Court that it was mistaken on March 15, 1991 when it issued the seizure warrant.

## III. GOVERNING LEGAL PRINCIPLES AND ANALYSIS

Section 6331(a) of the Internal Revenue Code authorizes the collection of taxes by "levy upon all property and rights to property" belonging to a person who fails to pay taxes for which he is liable within 10 days of a demand for payment. A levy under the Code "includes the power of distraint and seizure by any means." 26 U.S.C. § 6331(b). However, in *G.M. Leasing,* 429 U.S. 338, 97 S.Ct. 619, the Supreme Court recognized that the Fourth Amendment requires the IRS to obtain a warrant for entry into a private place in order to effect such a levy of personal property located there. 429 U.S. at 354–55, 359, 97 S.Ct. at 629–30, 632. The *G.M. Leasing* Court expressly acknowledged that, on the facts before that Court, probable cause existed to believe that assets subject to seizure would be found on the premises searched. 429 U.S. at 352, 97 S.Ct. at 628. But implicit in that analysis

was the requirement of probable cause in order for a seizure warrant to issue. *See id.* Thus, in *United States v. Condo,* 782 F.2d 1502 (9th Cir.1986), the Ninth Circuit cited *G.M. Leasing* to expressly hold that a warrant authorizing the entry onto private property to effect a federal tax levy may issue only upon a showing of probable cause. 782 F.2d at 1504–05; *see Flores v. United States,* 551 F.2d 1169, 1174–75 (9th Cir.1977); *In re Gerwig,* 461 F.Supp. 449, 451–52 (D.C.Cal.1978).

In general, to obtain a seizure warrant the IRS must demonstrate probable cause that the place to be entered will contain "seizable goods," *G.M. Leasing,* 429 U.S. at 351, 97 S.Ct. at 627–28, or show that there exists "probable cause to connect the assets seized to the delinquent taxpayer," *Condo,* 782 F.2d at 1502. More particularly, the judicial officer should not issue an entry-seizure warrant unless the supporting affidavits demonstrate probable cause to believe that:

(1) An assessment of tax has been made against the taxpayer;

(2) Notice and demand have been properly made;

(3) The taxpayer has neglected or refused to pay said assessment within ten days after notice and demand; and

(4) Property, subject to seizure, presently exists at the premises sought to be searched and that said property either belongs to the taxpayer or is property upon which a lien exists for the payment of taxes.

*Gerwig,* 461 F.Supp. at 452. The taxpayers do not challenge the sufficiency of McFarland's Declaration as to the first three requirements enunciated in *Gerwig.* Rather, their challenge is limited to their contention that the undersigned incorrectly concluded that the Declaration established probable cause that property subject to seizure would be found at the Coppola compound.

Probable cause in the Second Circuit is determined by reference to the "totality-of-the-circumstances." *United States v. Ponce,* 947 F.2d 646, 650 (2d Cir.1991) (quoting *Illinois v. Gates,* 462

U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)), *cert. denied, Gonzalez–Calas v. United States,* —— U.S. ——, 112 S.Ct. 1492, 117 L.Ed.2d 633 (1992). Probable cause is not analyzed according to a precise set of rules, but rather it is a "fluid concept—turning on the assessment of probabilities in particular factual contexts." *United States v. Rowell,* 903 F.2d 899, 902 (2d Cir.1990) (quoting *Gates,* 462 U.S. at 232, 103 S.Ct. at 2329). Importantly, the revenue agent is not required to offer "hard certainties," *Texas v. Brown,* 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983) (quoting *United States v. Cortez,* 449 U.S. 411, 418, 101 S.Ct. 690, 695–96, 66 L.Ed.2d 621 (1981)), or even to make a prima facie showing, *United States v. Burke,* 718 F.Supp. 1130, 1136 (S.D.N.Y. 1989); *United States v. Main Street Distributing, Inc.,* 700 F.Supp. 655, 659 (S.D.N.Y.1988). Instead, the revenue agent must establish a "fair probability" that the requested entry will yield items subject to seizure. *See Burke,* 718 F.Supp. at 1136; *Main Street,* 700 F.Supp. at 659. Bearing those principles in mind, this Court will address the taxpayers' contention that it erred in concluding that the McFarland Declaration established probable cause. The Court rejects the taxpayers' challenge.

■ At the outset, the Court notes that it credits the veracity of McFarland's sworn representations. McFarland began by establishing the taxpayers' relationship to the location to be searched. Most importantly, the taxpayers resided on the property. Additionally, McFarland informed the Court that the 6097 Strickland Avenue address consisted of four connecting parcels, all of which were owned by corporations controlled by the taxpayers.[4] (McFarland Declaration ¶ 8.) Based on her observations, McFarland further averred that several buildings sat on the property and that

each of those buildings potentially housed both business and personal assets. A dock was located on the Strickland Avenue property as well, to which McFarland stated boats were secured. Finally, McFarland informed the Court that almost all items stored on the Coppola property were owned by the taxpayers themselves or by Coppola-controlled corporations against which nominee liens had been filed.

Upon examination of those and the remaining portions of McFarland's Declaration, this Court stands by its initial determination that the Declaration established probable cause. A federal tax lien arises against all property and rights to property in which a delinquent taxpayer has an interest. 26 U.S.C. § 6321. The Coppolas resided at the compound at 6097 Strickland Avenue and in this Court's view, that fact creates a "fair probability" that they would have an interest in personal property found or stored there. Indeed, to the extent of items located at the Coppolas' residence or on connected parcels, the probability is greater that those items belonged to the Coppolas than that they belonged to anyone else. Moreover, this Court stresses that its initial probable cause determination was based, to a great extent, on facts learned through McFarland's personal investigation. For instance, McFarland dutifully informed the Court that she had observed construction equipment, boats, and cars at the Coppola compound, and those items were identified in her Declaration as the specific targets of the Writ of Entry. In that regard this Court was pleased in that McFarland did not seek license to pillage the taxpayers' home and private papers.

Additionally, McFarland's investigation uncovered that the Coppolas' residence was also the base of operations for several cor-

---

**4.** The Court rejects the taxpayers' argument that the agents exceeded their authority in searching the adjoining parcels. Their argument is based on the fact that the three parcels each had their own address, and did not share the 6097 Strickland Avenue address as McFarland averred. However, that three distinct parcels of real estate existed at the Coppola compound was made clear to this Court in McFarland's Declaration.

McFarland fully apprised this Court that her application concerned the entire compound. The Court therefore issued the entry warrant with the clear understanding and expectation that all three parcels would be entered, and would not have acted differently if it had known that the other two parcels had addresses other than 6097 Strickland Avenue.

porations which the taxpayers owned and managed. She presented this Court with a sufficiently detailed picture reflecting that these several corporations and the taxpayers were significantly related. For example, she alleged that the corporations' business assets were commingled with the taxpayers' personal assets at the compound. Consequently, although this Court contemplated that certain items may have been titled to a Coppola-controlled company and not to the Coppolas themselves, the Court concluded, and still believes today, that McFarland demonstrated a fair probability that the Coppolas would have had, at the least, an ownership interest in such items. It must be remembered that to procure the entry warrant, it was not up to the IRS to prove with certainty that the Coppolas had an interest in the personal property they sought to seize. The lesser burden placed upon the IRS was satisfied by McFarland. Thus, the Court adheres to its initial finding that probable cause existed to believe that the premises to which the IRS sought entry contained property upon which a lien existed for the payment of the tax obligations of the Coppolas. *Gerwig*, 461 F.Supp. at 452.

In addition to the taxpayers' general challenge to the affidavit, they argue that McFarland omitted the fact of liens held by Barclays Business Credit on several articles of seized construction equipment. That omission, they suggest, is fatal to the Writ of Entry's validity.

An omission may serve as the basis for invalidating a warrant only if (1) the attesting agent recklessly or intentionally omitted facts when preparing the supporting affidavit, and (2) upon review of the affidavit including the previously omitted facts, the Court reaches a contrary conclusion as to the existence of probable cause. *Rivera v. United States*, 928 F.2d 592, 604 (2d Cir.1991); *United States v. Campino*, 890 F.2d 588, 592 (2d Cir.1989), *cert. denied*, 494 U.S. 1068, 110 S.Ct. 1787, 108 L.Ed.2d 788 (1990); *Condo*, 782 F.2d at 1506; *see also Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676–77, 57 L.Ed.2d 667 (1978). An omission is deemed "reckless" for this analysis if the omitted facts were " 'clearly critical' " to the probable cause determination. *Rivera*, 928 F.2d at 604 (quoting *DeLoach v. Bevers*, 922 F.2d 618, 622 (10th Cir.1990)). Thus, this Court's analysis necessarily centers on whether it would have declined to grant the Writ of Entry if McFarland's affidavit had disclosed the existence of the Barclays liens. The Court finds that it would have granted the Writ of Entry in any event.

The substance of the taxpayers' argument is that the extent of Barclays' security interest is such that, after Barclays' interest is satisfied, the taxpayers will hold no equity in the relevant articles of construction equipment, and thus, there will be no property for the IRS to credit to the taxpayers' liabilities through levy. This Court respects the taxpayers' argument, but the argument hinges on the premise that Barclays' security interests were superior to the federal tax liens then existing against the same equipment. The question of the seniority of these competing liens is before this Court in a separate and distinct application made by Barclays. And although that priority dispute is beyond the scope of the instant proceeding, the Court notes that it is governed by a body of unsettled Second Circuit law.

The taxpayers have not pointed to any authority, nor has the Court located any, for the proposition that McFarland was obligated to demonstrate in her affidavit that all liens on the construction equipment were inferior to the federal tax liens. In *Cipriano v. Tocco*, 757 F.Supp. 1484, 1487–88 (E.D.Mich.1991), the IRS auctioned real property that it had levied upon pursuant to tax liens which arose against the defendant, Tocco. The plaintiffs held a security interest in that same property at the time of the auction, and the court addressed various motions regarding the rights to the real property and the auction proceeds. To settle the priority dispute between the plaintiffs and the IRS, the court engaged in a two-step analysis, considering first whether the defendants had an interest in the property to which a federal tax lien could attach, and second whether that lien

primed the plaintiffs' lien. The court's analysis of the first prong—whether attachable property rights were held by the Toccos—underscores that, in this case, the existence of Barclays' lien was immaterial to the probable cause determination of this Court:

> Moreover, the fact that the Toccos may have lacked any *equity* in the ... property (i.e., the value of the Toccos' interest in the land contract was less than the amount of their debt to the [plaintiffs]) does not, in this Court's view, mandate the conclusion that there were no "property or rights to the property ... belonging to" the Toccos to which the IRS lien could attach. In *Aquilino*, the Supreme Court made clear that the preliminary question of whether the taxpayer/debtor has any property interest to which the IRS lien can attach is entirely separate from the issue of whether the IRS lien has priority over other competing liens. To conclude that the taxpayer has no interest in the subject property simply because the competing lien exceeds the value of the taxpayer's interest in the property would in effect put the cart before the horse by presuming that the competing lien occupies a position of priority with respect to the federal tax lien, whereas the issue of priority is ultimately a question of federal statutory law.... *Aquilino*, [363 U.S. at 514 n. 5] 80 S.Ct. at 1280 n. 5.

*Cipriano*, 757 F.Supp. at 1489–90 (citing *Aquilino v. United States*, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960)).

■■■ The revenue officer need only demonstrate probable cause that the place to be searched contains property subject to a federal tax lien. *Gerwig*, 461 F.Supp. at 452. Thus, this Court would not have denied the IRS one potential avenue of recovery of the Coppolas' delinquencies simply because of a competing Barclays lien on certain articles of equipment. The taxpayers' contention that the amount of the underlying debt to Barclays far exceeded the value of equipment seized is irrelevant even if accepted as true. Regardless of the amount of that debt, there would still be uncertainty surrounding the priority issue. *See generally United States v. Shriver*, 645 F.2d 221, 223 (4th Cir.1981) (revenue agents must be given substantial discretion as to property they designate for seizure in warrant; in advance of entry, the agents are not required to determine the probable forced sale value of property they expect to uncover). Thus, this Court would not then have made a conclusive determination foreclosing the IRS from seizing this property based on the existence of a competing lien.[5] Therefore, the inclusion of information regarding Barclays' liens would not have required a different result regarding the existence of probable cause in McFarland's Declaration.[6] Based on McFarland's Declaration, this Court correctly concluded that there existed a fair probability that proper-

---

**5.** By the same token, the Court fails to see how John Rosatti's claim to several automobiles should have changed the initial probable cause determination. The taxpayers have not alleged that McFarland intentionally or recklessly failed to disclose facts that would have alerted this Court to Rosatti's claim of ownership. Indeed, such facts likely did not exist, as according to New York State Department of Motor Vehicles' records, none of the seized vehicles were registered to Rosatti. Thus at the time of the warrant application, the Court could have known only that several passenger vehicles were stored on or adjacent to the taxpayers' residence. Based on that information, there existed a "fair probability" that the Coppolas had an interest in those vehicles.

**6.** That the taxpayers have interposed an argument based on Barclays' security interests un-

derscores the infirmity of their standing to bring this proceeding in the first instance. The Internal Revenue Code contains an explicit waiver of sovereign immunity so that third-party lien holders, like Barclays, may have their rights vis-a-vis the IRS adjudicated. *See* 26 U.S.C. § 7426. Indeed, Barclays' claims arising out of the existence of their liens are presently before the Court on Barclays' own application. Thus, the appropriate forum for determining the priority issue was open to Barclays, and they have ensured that they will be heard on that issue. The Court will therefore not resolve it now at the behest of the taxpayers. In any event, since the taxpayers claim that they have no ownership interest in the seized property, the answer to the Barclays' priority issue should be of no practical matter to the taxpayers regardless of its resolution.

ty in which the Coppolas held an interest would be found at the Coppola compound.

## CONCLUSION

In summary, this Court has reviewed the McFarland Declaration and found that the Declaration supports the issuance of the Writ of Entry. To secure the Writ, McFarland was required to demonstrate probable cause to believe that property owned by the Coppolas, or property to which a lien had attached for the partial satisfaction of the Coppolas' tax liabilities, was present at the premises sought to be searched. The McFarland Declaration meets that requirement. It is therefore respectfully recommended that the taxpayers' application for the return to them of all seized property be denied.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

SO ORDERED.

## APPENDIX A

### DECLARATION OF REVENUE OFFICER MCFARLAND

Revenue Officer Elsie McFarland, pursuant to the provisions of 28 U.S.C., § 1746, declares:

1. I am a Revenue Officer, employed in the Collection Division of the Office of the District Director, Internal Revenue Service at 1 Lefrak City Plaza, Corona, N.Y. 11368. As a Revenue Officer, I have the duty and authority to collect federal taxes by seizure and sale under the provisions of Section 6331 of the Internal Revenue Code of 1986.

2. On the dates and in the amounts set forth below, a Delegate of the Secretary made assessments against, gave notice thereof, made demand for payment and gave notice of intent to levy, pursuant to sections 6201, 6202, 6303 and 6331 of the Internal Revenue Code of 1986, James M. Coppola, Jr. and Barbara Coppola:

| Type of Tax | Period | Assessment Date | Notice & Demand | Assessments |
|---|---|---|---|---|
| Income | 12–31–78 | 02–25–86 | 02–25–85 | 29,869.62 |
| Withholding & FICA | 12–31–84 | 07–21–86 | 07–21–86 | 209,938.84 |
| Withholding & FICA | 09–30–86 | 06–10–87 | 06–10–87 | 216,412.92 |
| Withholding & FICA | 09–80–87 | 07–11–88 | 07–11–88 | 152,401.85 |
| Withholding & FICA | 06–30–90 | 12–20–90 | 12–20–90 | 174,086.35 |

3. The said taxpayers have neglected or refused to pay the full amounts of the taxes assessed within ten days after such notices and demands and this neglect or refusal continues to the date of this declaration.

4. There is now due, owing and unpaid with respect to such taxes, a total of $627,616.47, plus statutory additions from the dates of assessment.

5. By reason of these assessments, liens have arisen on all property and rights to property of said taxpayers as prescribed by Section 6321 and 6322 of the Internal Revenue Code of 1986.

6. By reason of the taxpayers' neglect and failure to pay such taxes within ten days after said notice and demand, and after 30 days notice of intent to levy, a levy may be made on all property and rights to property belonging to the taxpayers, or in which the taxpayer has an interest, or to which the Federal Tax Liens attach.

7. Attached hereto and incorporated herein by reference is a 2 page Fact Sheet which sets forth the collection efforts made prior to the relief sought herein.

8. From personal observations made during the course of my official duties I know that the taxpayers reside at 6097 Strickland Avenue, Brooklyn, N.Y. 11234 (hereinafter, "the Strickland Avenue property"). The location is a series of buildings on four lots all known by the one address. The lots are owned by three corporations, Coppola Realty Corporation, Mill Harbor Development Corporation, and Amandy Realty Corporation, of which the taxpayers are the only corporate officers, and said corporations are the nominee, transferee, and/or alter ego of the taxpayers.

9. The taxpayers live in a part of one of the buildings and store business and personal assets in the remaining areas of the buildings on the Strickland Avenue property.

10. Although the taxpayers have never allowed me on the premises, I have been able to observe construction equipment on the premises and boats by the dock. I have reason to believe that the equipment and boats belong either to the taxpayers directly or through nominee corporations, JJ's Landing Company Inc., JAJ Equipment Corp. and JMZ Carz Inc., are corporations controlled by the taxpayers and the nominees, transferees, and/or alter egos of the taxpayers. I have reason to believe that the taxpayers purchased a Ferrari Testarossa and a Formula 357 Boat, and are storing them on the premises. The Strickland Avenue property also contains a dock at which the taxpayers store at least one boat. The boat is titled to JJ's Landing. I do not know to whom title to the car is registered.

11. I also have reason to believe that the taxpayers are storing other assets in the buildings. A prior lienholder had secured a court order and entered the buildings. He informed me that he saw antique trucks, antique cars, boats, and additional machinery and equipment inside the buildings.

12. Based on my observations of the taxpayers' lifestyle, it is believed they may have assets of a collectible nature stored on the Strickland Avenue property.

13. It is also believed that the taxpayers may physically bar IRS Personnel from entering the areas containing the assets of greatest value. We specifically request permission to enter the entire premises and to use professional locksmiths to remove any locks the taxpayers may have in place. It is not our intention, at this time, to seize any of the taxpayers' personal furniture or normal household goods but we must have access to the entire premises to determine what seizable assets are there.

14. I have observed two large dogs on the premises. It is reasonable to assume that they will be there on the day of the seizure. If the taxpayers either cannot or will not restrict the dogs I intend to have a professional dog handler restrain the dogs.

15. Although I am aware of the decision of the United States Supreme Court in *G.M. Leasing v. United States,* I have not requested permission from the taxpayers to enter on the premises. The case history indicates that James M. Coppola Jr. and Barbara Coppola have over a period of many years, placed their assets beyond the reach of Internal Revenue Service. This has been done both by physically placing the assets in inaccessible locations and titling the assets to nominees. All of the assets subject to this proposed seizure can be readily moved and in my opinion they would be moved as soon as I informed the taxpayers I was aware of their location.

16. No prior application has been made for the relief sought herein. The United States has commenced a suit against James and Barbara Coppola in the Eastern District of New York, CV–88–3456, in an effort to reduce to judgment unpaid tax liabilities other than those which are the subject of this request, except that the joint income tax liability of James and Barbara Coppola for 1978 is the subject of that suit, and seeking to satisfy those liabilities from assets other than those which are the subject of this application. The United States also commenced a suit against James Coppola, CV–88–3069, and to reduce to judgment a liability which is a not subject of this application and to satisfy that liability from assets other than those which are the

subject of this application. Both of those actions are pending before Judge Weinstein.

Pursuant to 28 U.S.C., § 1746 I declare that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed on March ——, 1991, at Brooklyn, New York.

/s/ Elsie McFarland
Elsie McFarland
Revenue Officer
1 Lefrak City Plaza
Corona, N.Y. 11368