**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Robert DeLEON, Defendant–Appellant.**

No. 89–30230.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 2, 1990.

Filed Feb. 7, 1992.

Withdrawn Nov. 10, 1992.

Decided Nov. 10, 1992.

white. But they can't keep a school that may have fallen short of certain asset to liability standards if it's black.

Jeffrey K. Finer and Robyn L. Pugsley, Pat Stiley & Associates, Spokane, Wash., for defendant-appellant.

Stephanie J. Johnson, Asst. U.S. Atty., Spokane, Wash., for plaintiff-appellee.

Before: HUG, D.W. NELSON, Circuit Judges, and WALKER,* District Judge.

## ORDER

## OPINION

WALKER, District Judge:

On May 22, 1989, Robert DeLeon, Jr., was indicted for manufacturing marijuana in violation of 21 U.S.C. § 841(a)(1). After the district court denied his motion to suppress evidence, DeLeon was convicted on one count of manufacturing marijuana. The district court imposed a mandatory minimum sentence of five years incarceration and four years supervised release. DeLeon was released on his own recognizance during the pendency of his appeal.

DeLeon appeals his conviction on the grounds that: (1) the district court improperly denied his motion to suppress evidence in violation of the Fourth Amendment because the affidavit used to obtain the search warrant contained material misrepresentations or omissions of fact; and (2) the mandatory minimum sentencing provisions of 21 U.S.C. § 841(b)(1)(B) violate his rights of due process and equal protection. We REVERSE the district court on the first ground and REMAND for further proceedings consistent with this opinion.

### I.

Robert DeLeon owned forty acres of uncultivated land in Moses Lake, Washington. Local rumors had for some time circulated that DeLeon was in the business of growing marijuana. On February 21, 1989, three young men from Sunnyside, Washington, Frank and Charles Linedecker and Loren Brown, came to discuss the sale of farm equipment with DeLeon's neighbor, Frank Sharp. The three men saw a piece of equipment on DeLeon's property and expressed an interest in purchasing it. Sharp warned the men that there was a chance there was marijuana growing in the outbuilding (a shop building of metal construction) and that they should "be very careful because they could get killed up there."

Upon approaching the shop, the men were unable to see inside the windows or enter the building, which was locked from the inside. The men returned and allegedly informed Frank Sharp that DeLeon was growing marijuana in the shop building.

Sharp then told Deputy Detrolio that three men went up to DeLeon's property to look at some equipment and returned saying that they had seen marijuana growing. Chief Deputy Wiester traced the names of the three men and gave Investigator Jurovich the names and telephone numbers of the three men.

On February 23, 1989, Investigator Jurovich conducted telephone interviews of Charles Linedecker, Loren Brown, and Frank Sharp. In an unrecorded interview, Charles Linedecker denied entering the building and seeing or smelling anything incriminating and then told Investigator Ju-

---

* The Honorable Vaughn R. Walker, United States District Judge for the Northern District of California, sitting by designation.

rovich that he would have to talk with Loren Brown. Loren Brown informed Investigator Jurovich that the three men smelled marijuana emanating from the outbuilding, that Frank and Charles Linedecker attempted but were unable to open a door to the shop any further than one foot because it was locked from the inside, and that both Frank and Charles Linedecker returned from their unsuccessful attempt to look inside the outbuilding and told Brown that DeLeon was growing marijuana. A transcript of Brown's taped statement was attached to the supporting affidavit.

Sharp's conversation was also recorded and used in support of the search warrant. Frank Linedecker was never questioned. Sergeant Shay, who was present during Investigator Jurovich's conversations with Linedecker, Brown and Sharp, drafted an affidavit for a search warrant, and presented it to Judge Sperline, of the Superior Court of Washington, on February 23, 1989. Judge Sperline issued a search warrant, and approximately 351 marijuana plants in various stages of maturity were seized from DeLeon's property.

In this appeal, DeLeon challenges the district court's finding that Sergeant Shay's omissions were not intentional or reckless as clearly erroneous and asserts that the modified search warrant would not provide probable cause to search DeLeon's property. Thus, argues DeLeon, his motion to suppress evidence was improperly denied.

DeLeon also challenges the application of the mandatory minimum sentence in 21 U.S.C. § 841(b)(1)(B)(vii) because it does not define "marijuana plant" and fails to direct a court whether to consider the weight of marijuana or the number of plants in calculating the appropriate mandatory minimum sentence. Because we find that the district court erred in not suppressing the evidence obtained under the search warrant, the sentencing questions are moot and will not be decided today.

## II.

In reviewing a district court's findings regarding omissions and misrepresentations in affidavits supporting a search warrant, we review for clear error. *United States v. Dozier,* 844 F.2d 701, 705 (9th Cir.), *cert. denied,* 488 U.S. 927, 109 S.Ct. 312, 102 L.Ed.2d 331 (1988); *United States v. McQuisten,* 795 F.2d 858, 863 (9th Cir. 1986). However, a determination of whether such omissions and misrepresentations were material to a determination of probable cause is a mixed question of law and fact, subject to *de novo* review. *United States v. Elliott,* 893 F.2d 220, 222 (9th Cir.), *amended, reh'g denied,* 904 F.2d 25 (9th Cir.1990), *cert. denied* —— U.S. ——, 111 S.Ct. 268, 112 L.Ed.2d 224; *United States v. Simpson,* 813 F.2d 1462, 1472 n. 14 (9th Cir.), *cert. denied,* 484 U.S. 898, 108 S.Ct. 233, 98 L.Ed.2d 192 (1987).

In *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court held that a defendant seeking an evidentiary hearing to determine whether a facially valid affidavit contains false statements must make a substantial preliminary showing that: (1) the affidavit contains intentionally or recklessly false statements and (2) the affidavit cannot support a finding of probable cause without the allegedly false information. If a defendant prevails at a *Franks* evidentiary hearing, evidence obtained on the basis of a search warrant issued on an affidavit containing material omissions or misrepresentations must be excluded. In *United States v. Stanert,* 762 F.2d 775 (9th Cir. 1985), *amended, reh'g denied,* 769 F.2d 1410 (9th Cir.1985), we extended *Franks* to omissions of material facts and concluded that "the Fourth Amendment mandates that a defendant be permitted to challenge a warrant affidavit valid on its face when it contains deliberate or reckless omissions of facts that tend to mislead." *Id.* at 781.

■ In this case, the district court determined that Charles Linedecker's full statement, including his denial, should have been included in the warrant application. The government argues, however, that because this omission may have been solely the fault of a non-affiant, Inspector Jurovich, there can be no basis for finding that

a *Franks* hearing was necessary. We disagree. A deliberate or reckless omission by a government official who is not the affiant can be the basis for a *Franks* suppression. The Fourth Amendment places restrictions and qualifications on the actions of the government generally, not merely on affiants. While we do not suggest that this is the case here, a different rule would permit government officials deliberately to keep from affiants or the court information material to the determination of probable cause and by such conduct avoid the necessity of a *Franks* hearing.

The Supreme Court heeded this point in *Franks*, 438 U.S. at 163–64 n. 6, 98 S.Ct. at 2680 n. 6, and at least two circuits have explicitly stated this tacit but obvious premise. *See United States v. Calisto*, 838 F.2d 711, 714 (3d Cir.1988); *United States v. Pritchard*, 745 F.2d 1112, 1118 (7th Cir. 1984). We agree with the *Calisto* court that, "[i]f we held that the conduct of ... the affiant[ ] was the only relevant conduct for the purpose of applying the teachings of *Franks*, we would place the privacy rights protected by that case in serious jeopardy. As the Supreme Court noted in *Franks*, 'police [can]not insulate one officer's deliberate misstatements merely by relaying it through an officer-affiant personally ignorant of its falsity.' 438 U.S. at 164 n. 6, 98 S.Ct. at 2680." *Calisto*, 838 F.2d at 714 (footnote omitted). Therefore, we join the Third and Seventh Circuits in holding that misstatements or omissions of government officials which are incorporated in an affidavit for a search warrant are grounds for a *Franks* hearing, even if the official at fault is not the affiant.

The facts of this case demonstrate the soundness of this rule. Agent Jurovich knew that Charles Linedecker denied seeing or smelling marijuana on DeLeon's property, but was able to "hide" that knowledge and attempt to circumvent the *Franks* rule by simply not telling Sergeant Shay, the affiant. The result was that a warrant based on a variety of anonymous and hearsay statements could be obtained for a particularly non-exigent suspected crime, involving neither violence nor mobile contraband.

### III.

In determining whether probable cause to search exists, a court must view the "totality of circumstances" set forth in the affidavit. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), *reh'g denied*, 463 U.S. 1237, 104 S.Ct. 33, 77 L.Ed.2d 1453 (1983). The relevant inquiry under *Gates* is whether in light of all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Id.* at 238, 103 S.Ct. at 2332. In general, a court reviewing the validity of a search warrant is limited to the information contained on the face of the underlying affidavit. *United States v. Taylor*, 716 F.2d 701, 705 (9th Cir.1983). Where, as here, a warrant's validity is challenged for deliberate or reckless omissions of facts that tend to mislead, the affidavit must be considered with the omitted information included. *United States v. Condo*, 782 F.2d 1502, 1506 (9th Cir.1986).

We find that if the omitted information had been included in the application for the search warrant, no reasonable person could have found probable cause to issue the warrant. The warrant rested on the following: (1) Frank Sharp's claim that Frank and Charles Linedecker and Loren Brown told him that they saw and smelled marijuana growing on DeLeon's property, (2) Charles Linedecker's flat denial that he smelled or saw anything, and (3) Loren Brown's statement that although he did not see marijuana in DeLeon's shed and was not sure the Linedeckers had seen marijuana, he did smell growing marijuana.

The district court's order indicates that the warrant was issued in large part because Frank Sharp, a credible witness, stated that Frank and Charles Linedecker and Loren Brown told him they saw and smelled marijuana. But the complete warrant application makes clear that the two percipient witnesses questioned *denied* seeing marijuana. The only remaining peg on which to hang the warrant is Brown's claim

to have *smelled* marijuana on DeLeon's property. But there was no finding that Brown was qualified to recognize the odor of growing marijuana, which doubtlessly differs from the odor of cured or burning marijuana. To the extent that the Supreme Court's dictum in *Johnson v. United States*, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948), can be any guide, it clearly states that odors can be the basis for probable cause if a magistrate "finds the affiant *qualified* to know the odor, and it is one sufficiently distinctive to identify a forbidden substance." *Id.* at 13, 68 S.Ct. at 369 (emphasis added). *See also United States v. Pond*, 523 F.2d 210, 212 (2d Cir. 1975) (holding that "smell alone may justify issuance of a warrant *if the affiant is qualified to know the odor and the odor is distinctive.*") (emphasis added), *cert. denied*, 423 U.S. 1058, 96 S.Ct. 794, 46 L.Ed.2d 649 (1976).

■ We hold that a warrant cannot be based on the claim of an untrained or inexperienced person to have smelled growing plants which have no commonly recognized odor. *Cf. United States v. Barron*, 472 F.2d 1215, 1217 (9th Cir.) (holding, in the context of vehicular searches, that "the fact that *an agent familiar with the odor of marijuana* smelled such an odor emanating from an automobile ... alone was sufficient to constitute probable cause for a subsequent search for marijuana.") (emphasis added), *cert. denied*, 413 U.S. 920, 93 S.Ct. 3063, 37 L.Ed.2d 1041 (1973); *accord United States v. Morin*, 949 F.2d 297, 300 (10th Cir.1991) (finding probable cause for search of passenger's luggage on train where narcotics detective smelled marijuana). Nothing in this record suggests that Brown is qualified to detect the odor of the growing plants, save his claim that he had been around an unspecified form of marijuana some years prior.[1] Therefore, we find that no probable cause supported the warrant in this case.

In finding that the warrant was not predicated on probable cause, we note that but for its misinterpretation of Loren Brown's affidavit the district court, too, would likely have found probable cause lacking. With Charles Linedecker's denial added, the district court called probable cause "a close question." Transcript at 227 line 9. The reason the court gave for finding the scales tipped in favor of probable cause was that:

> *Mr. Brown,* who was one of the three, *said that Linedecker did say this* [that he saw marijuana], and that's confirmed by Mr. Sharp's testimony. So I think a reasonable magistrate could conclude that there was probable cause to believe in that the three boys were quoted by Mr. Sharp as saying that they smelled and saw marijuana on the premises, and *one of the three boys stated in his statement that the other two told him that they had seen and smelled marijuana.* The fact that one of them thereafter denied seeing anything would not be the basis in my opinion for withholding the granting of the motion for the search warrant.

Transcript at 227 lines 12–22 (emphasis added). In other words, the district court found that the "close question" was resolved because it thought Brown confirmed that a Linedecker told him he could see marijuana. Yet a careful reading of the taped conversation between Jurovich and Brown reveals that *Brown did not confirm this.* To the contrary: despite Jurovich's several direct inquiries, Brown repeatedly asserted that he was not sure the Linedeckers could see anything. Accordingly, it was error for the district court to resolve this close question in favor of finding probable cause, and we conclude that the motion for suppression of evidence should have been granted.

### CONCLUSION

The denial of appellant's motion for suppression of evidence is REVERSED and this case is REMANDED for further proceedings consistent with this opinion.

HUG, Circuit Judge, dissenting:

The issue before us on this appeal is not whether the affidavit that was submitted

---

**1.** The unrebutted expert testimony in the record is that detection of marijuana plant aroma requires "a trained person." Transcript at 163 lines 15–18 (testimony of Dr. Woodford).

to Judge Sperline, with its incorporated attachments, was adequate to establish probable cause for the search warrant. As the district court noted, DeLeon did not contest this point. (RE 40.) Rather, the issue is whether a more complete description of Agent Jurovich's conversation with Charles Linedecker should have been included with the affidavit and, if so, whether the content of the affidavit, together with the omitted statements of Charles Linedecker, was sufficient to establish probable cause.

Agent Shay's statement in the affidavit was:

> On 02–22–89 Investigator Jurovich called Chuck Linedecker at his residence. Mr. Linedecker advised that they were there, but that Jurovich would have to talk with Loren Brown. Jurovich did talk with Loren Brown and a taped statement was taken from Mr. Brown over the phone.

This was an incomplete description of Agent Jurovich's conversation with Linedecker. The district judge found that, in addition to simply referring Agent Jurovich to Loren Brown, Linedecker had said he did not see anything, did not smell anything, and did not want to talk about it.

The district court concluded that even though the statement was made to Agent Jurovich and it was Agent Shay who signed the affidavit, Linedecker's statement should have been included. With this we all agree. The question then becomes the effect the inclusion of the omitted statement would have had on the determination of probable cause.

The district court in the *Franks* hearing heard the oral testimony of Frank Sharp, who he found to be credible. He also reviewed the transcribed tapes, submitted with the affidavit, and considered any impact the omitted Charles Linedecker statement would have had on Judge Sperline's determination to issue the search warrant. The district judge concluded

> While it is a close question, I do not feel that the Linedecker denial, had it been contained in there, would have been such that it would deter a reasonable magistrate in issuing a search warrant in the case for this reason: Mr. Brown, who

was one of the three, said that Linedecker did say this, and that's confirmed by Mr. Sharp's testimony. So I think a reasonable magistrate could conclude that there was probable cause to believe in that the three boys were quoted by Mr. Sharp as saying they smelled and saw marijuana on the premises, and one of the three boys stated in his statement that the other two told him that they had seen and smelled marijuana. The fact that one of them thereafter denied seeing anything would not be the basis in my opinion for withholding the granting of the motion for the search warrant.

I wholeheartedly agree with the district judge, and I believe the majority opinion results from a misunderstanding of the facts before Judge Sperline when he issued the search warrant. In the transcribed conversation of Frank Sharp, attached to the affidavit, Sharp described how the three boys came by to look at some equipment he had on his farm and looked next door and saw a green hay loader on De-Leon's property. The transcript proceeded:

JUROVICH: Okay and did you know these individuals at all?

SHARP: No, I did not know them at all, they came from Sunnyside, Washington up here to Roy Fode's sale and then they had gotten a sale bill that showed that I had a couple of grain bins for sale and they came over to look at those.

JUROVICH: Okay, so very good, then they are asking you about this equipment and go ahead from there.

SHARP: Right, and then I told them, the guy, Mr. DeLeon lived up there, and you know I didn't know if he was home or not, but they could go up and see if he was there. And the three boys went up in their car and then I was going up to do my chores and they came back down the road and they hailed me down, and stopped me and said yeah, he says, we went in the building, the man wasn't there, but he said, yeah you were right, that they were growing marijuana. He says I have seen some plants, and it, the

smell, he says you could get high just walking in the door.

JUROVICH: Now, can you describe the guy that said that to you?

SHARP: All three of the young boys were, young men were, all three of them were talking about the same time, they were really excited about it, they had never seen anything like it, or smelled anything like it, or anything like that and they were just, you know they were real excited about what it was.

JUROVICH: I see.

SHARP: And that is, so then I went right up then to Frank DeTrolio's and relayed the message what I had just been told by the boys, what was there and they were just utterly shocked, the door would be open that they could just walk inside the shop and they could see what they could see.

JUROVICH: Okay, but they definitely told you then that they had seen the growing plants?

SHARP: Yes, they did.

The relevant part of the transcript of the conversation with Loren Brown is as follows:

JUROVICH: Let me have you hang on a sec you went to the door of the residence of the DeLeon house, and there was nobody there . . .

BROWN: Oh no, there was a child there . . .

JUROVICH: Oh, okay . . .

BROWN: And then we drove on back to the equipment back there there's a big shop there.

JUROVICH: Oh okay, can you describe that shop a little?

BROWN: Well it looked like there was two parts of it. There is a big front there is a big front part of it with great big old bays and then there was a back part toward the back that was kind of separate it just had doors on the one side and a couple uh stacks coming out if it . . .

JUROVICH: Okay is this a metal or wood building?

BROWN: It's a metal like tin building.

JUROVICH: And then who walked up to that building first you said his name was Frank?

BROWN: Yea. Frank.

JUROVICH: Frank?

BROWN: Linebecker.

JUROVICH: Oh, oh Linebecker, I thought his name was Charles, does he go by Frank too?

BROWN: Uh no I was with two of them they are both brothers.

JUROVICH: Oh okay, so Frank walked up to the door and he said what to you?

BROWN: Uh he come back over and yuk that thing smells like marijuana over there and he said come here so we walked over that and it did.

JUROVICH: Okay, and and uh, how do you know the smell of marijuana again?

BROWN: Uh, just I've been around pot through school and that.

JUROVICH: How-how many times would you say you've been around the odor of marijuana no matter what circumstances?

BROWN: Uh, five.

JUROVICH: About five times.

BROWN: Oh yeah back in the younger days I is been quite a while but that yeah, like-like I told Frank its something growing in there, said if its not good to smell like fresh like it was grain like hay and that after you chop hay and all too.

JUROVICH: Okay and you were able to tell it was marijuana not hay?

BROWN: Yeah well uh, it smelled more like yeah like the smell of that of marijuana.

JUROVICH: And again you're not in any trouble but for us to be able to do anything with this thing and get him to quit selling the stuff and you know we all got kids but . . . so you're certain that it was marijuana then I guess is what I'm asking you.

BROWN: Uh, yeah I'd have to say yeah it sure smelled I'm sure it was.

JUROVICH: Well other-other . . . .

BROWN: Just by the you know cause Frank he tried to open up one of the doors and it there was no lock from the outside it just wouldn't open so it was locked from the inside.

....

JUROVICH: All right and can you tell me whether the room was, what the temperature was like in the room or did you go inside it?

BROWN: We didn't-didn't go inside.

JUROVICH: Okay.

BROWN: I'd say it was a lot higher than marijuana, uh you should be able to put your hand against the door and feel warmth and uh,

JUROVICH: Did you hear any fans running at all?

BROWN: Uh no, not ...

JUROVICH: And was the room dark or was there any lights on?

BROWN: You really couldn't tell.

JUROVICH: Oh I see.

BROWN: And then we (unintelligible).

JUROVICH: Okay, hand on just ... you didn't see any plants then though?

BROWN: No we did not.

JUROVICH: Just the terrific odor that you associated with marijuana?

BROWN: Yeah.

JUROVICH: Hang on a second. If you had to make a guess based on where the smell was coming from you said there was kind of two parts of the building, can you tell me which side of the building it would have been in?

BROWN: It would have been on the uh east side on the back side of the building.

JUROVICH: Back side, you were at the back side of the building?

BROWN: Yeah.

JUROVICH: So if you're standing at the back side of the building facing that door would it be to your right or the left?

BROWN: Well, the door would be on the south side of the building.

JUROVICH: Okay.

BROWN: On-on that side there it kinda set back the back portion of the build-ing set back in from the bigger portion like a shop or something, uh just the appearance it looked like two separate buildings they was kinda connected but ...

JUROVICH: When you looked inside what did you see?

BROWN: I-I didn't look inside I was overlooking at the loader and that.

JUROVICH: Did uh Frank or Charles look in there?

BROWN: Uh, yeah they tried opened the door I guess about a foot or something, that's about all the higher it would go.

JUROVICH: And what did they tell you they saw?

BROWN: Well, yeah he's growing marijuana. okay.

JUROVICH: Okay was that Frank or Charles that said that?

BROWN: Well they both kinda saying it.

JUROVICH: Okay, so they had actually seen the plants then?

BROWN: Well I really couldn't quite say, I seen them when he was lifting the door up and that he just it wasn't even really a foot it was just barely coming up.

JUROVICH: Okay, but they did talk to you later that he was growing marijuana there?

BROWN: Well I think they just kinda associated with the smell too.

It is evident that Sharp's transcript conflicted somewhat with Brown's. However, both were before Judge Sperline. There was no concealment of this fact. It is not unusual for witnesses to have varying recollections of the details of events observed; this was for Judge Sperline to evaluate. The majority seems to be revisiting this determination rather than determining the effect the omission of the Linedecker statement would have.

It is important to recall that DeLeon did not contest the adequacy of the affidavit and the attached transcripts to establish probable cause. This is for the very good reason that such a contention would have been unsuccessful.

A long line of authority in our circuit describes the substantial deference due to a magistrate in his determination of probable cause to issue a search warrant. In *United States v. McQuisten,* 795 F.2d 858, 861 (9th Cir.1986), we stated:

> A magistrate's determination of probable cause to issue a warrant is treated with great deference and is not reviewed de novo. We may not reverse a magistrate's finding of probable cause unless it is clearly erroneous. We need only find that under the totality of the circumstances the magistrate had a substantial basis for concluding that probable cause existed. In doubtful cases, preference should be given to the validity of the warrant.

(Citations omitted.)

We also noted in *McQuisten* the Supreme Court's statement regarding the standard to be used by a reviewing court in evaluating the magistrate's decision.

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, ... there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing,]" that probable cause existed.

795 F.2d at 861–62 (*quoting New York v. P.J. Video, Inc.,* 475 U.S. 868, 876, 106 S.Ct. 1610, 1615–16, 89 L.Ed.2d 871 (1986)) (citations omitted).

In an earlier decision of our court, we stated "[t]he affidavit is to be interpreted in a common-sense and realistic fashion; a hypertechnical interpretation is not required. In borderline cases, preference will be accorded to warrants and to the decision of the magistrate issuing it." *United States v. Martinez,* 588 F.2d 1227, 1234 (9th Cir.1978) (citations omitted).

Similarly, we stated in *United States v. Taylor,* 716 F.2d 701, 705–06 (9th Cir.1983):

> An affidavit is sufficient if it establishes probable cause; that is, if the stated facts would reasonably allow a magis-

trate to believe that the evidence will be found in the stated location.... [T]he affidavit need not establish that it was "more likely than not" that evidence would be found or preclude other innocent interpretations for the activities at his house. The affidavit need only "enable the magistrate to conclude that it would be reasonable to seek the evidence in the place indicated by the affidavit."

(Citations omitted.) The evidence supporting the warrant does not have to be admissible at trial in order to be considered. *United States v. Condo,* 782 F.2d 1502, 1507 (9th Cir.1986).

Thus, when the district judge is considering the effect of an omitted statement, he is concerned with whether the affidavit and its attachments, including the omission, are still sufficient to establish probable cause. *Id.* at 1506. As the district court concluded, an accurate statement of Linedecker's remarks, that he didn't see anything or smell anything and didn't want to talk about it, would most reasonably be interpreted as his not wanting to get involved. It is obvious he was there, and it is also obvious from both Sharp's and Brown's transcripts that he thought there was marijuana in the building, whether he saw it or only smelled it. It is highly unlikely that Judge Sperline would have changed his factual determination just because Linedecker wouldn't cooperate. Thus, what we are left with is the factual discrepancy between Frank's statements and Brown's statements. This was fully disclosed to Judge Sperline. He found the affidavit and attachments adequate to establish probable cause, and DeLeon did not contest that determination.

Frank recalled three excited boys returning from DeLeon's property saying there was indeed marijuana growing in there. He also thought they both saw it and smelled it and entered the building. Brown indicated that they actually did not enter the building and his statement is ambiguous about whether the Linedeckers saw the marijuana, when they raised the door one foot, or just smelled it. Brown himself did not see it. It would be a per-

fectly reasonable conclusion from the two statements that the Linedeckers did see it, although Brown did not. Sharp's statement did not indicate which of the boys said they saw it as they were all talking to him as they returned. Thus, his statement does not conflict with Brown's statement that Brown did not see the marijuana, only smelled it.

The evidence before Judge Sperline was not just that the boys smelled marijuana. There was substantial evidence from Sharp's statement that they also saw it. In addition, there was substantial evidence that the boys recognized the smell of growing marijuana. They were farm boys, seeking farm equipment, and would reasonably know the difference between hay and marijuana growing in a shop building. Brown clearly stated he recognized the smell. At the *Franks* hearing, an expert, Dr. Wofford, testified that the boys could well have recognized the smell of growing marijuana from their past experience.

The majority is second-guessing Judge Sperline's determination, not because of Charles Linedecker's statement, but because, under a cramped construction of the Sharp and Brown transcripts, they find none of the boys saw the marijuana and that they could not have recognized the smell of marijuana growing in a shop building. This appellate finding of fact, which has nothing to do with the omission of the Linedecker statement, does not accord the great deference due to the judge issuing the search warrant.