UNITED STATES of America, Appellee,

v.

Terry Glen APPLEBY, Appellant.

No. 91–2602.

United States Court of Appeals,
Eighth Circuit.

Submitted July 29, 1992.

Decided Sept. 25, 1992.

Rehearing and Rehearing En Banc
Denied Nov. 23, 1992.

Dan Viets, Columbia, Mo., argued (A. Wayne Davis, Little Rock, Ark., on the brief), for appellant.

1. The Honorable Russell G. Clark, United States District Judge for the Western District of Mis-

Gregory K. Johnson and Cynthia J. Hyde, Springfield, Mo., argued, for appellee.

Before McMILLIAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and LOKEN, Circuit Judge.

McMILLIAN, Circuit Judge.

Terry Glen Appleby appeals from a final judgment entered in the United States District Court[1] for the Western District of Missouri, upon a jury verdict, finding him guilty of one count of conspiracy to manufacture and distribute methamphetamine in violation of 21 U.S.C.A. § 846 (West Supp. 1992) and one count of possession of a three-neck, round-bottom flask with the intent to manufacture methamphetamine in violation of 21 U.S.C. § 843(a)(6). Appleby was sentenced to 235 months imprisonment on the conspiracy count and 48 months, to be served concurrently, on the possession of a flask count; five years supervised release on the conspiracy count and one year supervised release, to be served concurrently, on the possession of a flask count; and a special assessment of $100.00. For reversal, Appleby argues that the district court erred in (1) denying his motion to suppress the evidence seized from searches in Kansas, (2) denying his motion for judgment of acquittal on the basis that multiple conspiracies were shown, (3) determining his base offense level, and (4) allowing the government's handwriting expert to testify without proper notice to the defense. Appleby also argues that the cumulative effect of the trial court errors amounted to a violation of his right to due process and a fair trial. For the reasons discussed below, we affirm the judgment of the district court.

Appleby was involved in a conspiracy to manufacture and distribute methamphetamine in both Missouri and Kansas. This court affirmed the convictions of two of Appleby's co-conspirators, William Stockton and Gary Badley. *United States v.*

souri.

*Stockton*, 968 F.2d 715 (8th Cir.1992) (*Stockton*). Our opinion in *Stockton* fully sets forth the facts as they relate to Appleby, *id.* at 716–17, so we need not repeat them here.

## MOTION TO SUPPRESS

Appleby argues that the district court erred in denying his motion to suppress the evidence seized from his Thayer, Kansas, residence and the Chanute, Kansas, storage facility. Appleby argues that the affidavits for the search warrants contained material misrepresentations made with a "reckless disregard for the truth." *Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978) (*Franks*).

Agent Robert Beckham of the Kansas Bureau of Investigation filed the affidavits accompanying the applications for the search warrants. Agent Beckham relied on information provided by DEA Agent Harley Sparks. Some of the information was incorrect as the district court explained:

> According to Agent Beckham, Agent Sparks had reported that glassware and chemicals had been seized from storage facilities owned by defendants Appleby and Badley in Springfield, Missouri. Glassware and chemicals were found in only one facility at E–Z storage. That facility was under the control and possession of Thomas Edward Scott, not defendants Appleby or Badley.
>
> Furthermore, the affidavit for the search warrant of the Thayer residence alleged that the combined seizures from the storage lockers in Chanute and Springfield did not constitute an entire laboratory. This information could have led the magistrate who issued the warrant to believe that the remaining glassware and chemicals were located in the Thayer residence. The information apparently was incorrect because the government's chemist, Sanford Angelos, testified that the contents in the E–Z storage facility constituted a complete laboratory.

*United States v. Appleby*, No. 90–03419–01/07–CR–S–4, slip op. at 2–3 (W.D.Mo. May 6, 1991) (order).

The district court held that while some of the statements in the affidavit for the search warrant were false, "Appleby did not prove by a preponderance of the evidence that Agent Beckham made any false statements deliberately or with reckless disregard for the truth." *Id.* at 3–4. We agree with the conclusion of the district court, but for different reasons.

Assuming for the purposes of analysis only that Appleby did prove that the false statements were made with reckless disregard for the truth, we hold that, even without the false information, probable cause existed to issue both search warrants. *See Franks*, 438 U.S. at 171–72, 98 S.Ct. at 2684–85. As for the first search warrant for the storage unit at GMN Storage in Chanute, Kansas, Agent Beckham's affidavit correctly stated that Appleby had been under investigation for illegal drug activity and had been arrested in Springfield, Missouri. The affidavit also stated that evidence obtained from a search of Appleby and Badley's motel rooms, pursuant to a separate search warrant, indicated that Appleby had rented storage space in the Springfield area. Agent Beckman's affidavit explained that during this investigation, officers found a receipt for a storage area called GMN Storage in Appleby's name. Finally, the affidavit stated that further investigation resulted in locating the GMN storage area in Chanute and verifying the Appleby had rented a storage unit. Based on this evidence, without the false information about the glassware found in Springfield, probable cause existed to issue the search warrant.

As for the search warrant for Appleby's residence in Thayer, Kansas, the affidavit contained all of the information set forth in the storage unit affidavit. Additionally, the affidavit included the fact that glassware and precursor chemicals were found in the GMN storage area rented by Appleby. This evidence, without the false evidence regarding whether enough equipment for a full laboratory had been recov-

ered at other locations, was sufficient to constitute probable cause.

## EXISTENCE OF MULTIPLE CONSPIRACIES

Appleby next argues that the evidence at trial showed the existence of multiple conspiracies, not a single conspiracy as charged in the indictment and as the jury found. Therefore, Appleby argues that the district court should have directed a verdict of acquittal on the conspiracy count. Appleby's argument is identical to the arguments made by his co-conspirators Badley and Stockton in their consolidated appeal. We rejected their argument and, therefore, reject Appleby's argument for the same reasons. *See Stockton*, 968 F.2d at 717–18.

## DETERMINATION OF BASE OFFENSE LEVEL

■ Appleby next argues that the district court erred in determining that the conspiracy was responsible for between 30 and 100 kilograms of methamphetamine and, therefore, applying a base offense level of 38. U.S.S.G. § 2D1.1(c)(3) (1990). Appleby's argument is identical to the arguments made by his co-conspirators Badley and Stockton in their consolidated appeal. We rejected their argument and, therefore, reject Appleby's argument for the same reasons. *See Stockton*, 968 F.2d at 719–20.

## TESTIMONY BY GOVERNMENT HANDWRITING EXPERT

Appleby next argues that the district court should not have allowed the government's handwriting expert to testify because the name of the expert was not disclosed until a week into the trial. Appleby argues that this late disclosure made it impossible for him to hire his own handwriting expert.

The government argues that Appleby had ample notice of the use of a handwriting expert because, at a pre-trial hearing, the government requested that Appleby provide a handwriting sample. Additionally, the government argues that Appleby never requested a continuance to hire a handwriting expert.

■ The district court has broad discretion on whether to admit evidence and we will only review the district court's decision for an abuse of discretion. *United States v. Williams*, 545 F.2d 47, 50 (8th Cir.1976) (per curiam). We hold that the district court did not err in allowing the handwriting expert to testify. Appleby was aware prior to trial that the government had his handwriting sample and had seized drug notes during various searches. Additionally, as noted by the district court, the handwriting expert's report was available prior to trial in the government's open discovery file. Appleby and his co-defendants made many objects to the testimony of the handwriting expert, but none of them requested a continuance in order to hire their own expert.

## DUE PROCESS

Appleby lastly argues that the cumulative effect of all of the government's unfair practices allowed by the district court amounted to a due process violation. As we have held all of Appleby's individual claims without merit, we also hold that no due process violation occurred.

Accordingly, we affirm the judgment of the district court.

BRIGHT, Senior Circuit Judge, concurring separately.

This first-time offender, age thirty-one, will spend almost twenty years in prison, a victim of the war on drugs. Yet we seem to be losing that war, despite the dramatic casualties.

As I stated in a separate concurrence to the similar sentences imposed on Appleby's co-conspirators, "[w]hile I am obligated to affirm the sentences, I need not put my stamp of approval on them." *United States v. Stockton*, 968 F.2d 715, 722 (8th Cir.1992) (*Stockton*). In Appleby's instance, the district court judge seemed to share these sentiments, for he wrote, "[t]he sentence was at the lowest end of the guidelines which is excessive." Br. of Appellant at A5 (Judgment).

Appleby comes from a stable home and has a good family background. He made a

mistake and undoubtedly deserves punishment. But the twenty years imposed by the Guidelines goes beyond mere punishment.

I relate information on Appleby's background from the Presentence Report (PSR) and letters sent to the probation office so that the reader of this concurrence can make a reasoned judgment as to whether this sentence serves a proper purpose.

The PSR stated that "[t]he defendant was reared in an intact home environment and, from all indications, was provided with adequate love, discipline, and material necessities.... The defendant's father characterized Terry as a 'hardworking' individual whom he thought was never involved in drug or alcohol abuse. Mr. Appleby did advise that his son suffered emotional distress as a result of the divorce from his wife." PSR at ¶¶ 44–45. "The defendant's high school transcript indicated no behavioral, social, or psychological problems. The defendant was active in high school sports." PSR at ¶ 52.

Twelve neighbors, friends and family members wrote in support of Appleby. One acquaintance of ten years wrote: "I have *never* known a nicer more generous person in my life. I have seen Terry stop to help people stranded on the highway and go completely out of his way to get them going again. If this world was full of Terry Appleby's it would sure be a better place to live." Gov't App. at 30. His sister-in-law wrote: "He's the apple of his Dads [sic] eyes, but he was to everyone who knew him.... Terry's still a very good person, maybe he went astray for a while but he's back now and he's the same as ever. We all love him and will help him any way we can." *Id.* at 31–32. His brother stated: "If I could do some of his time in prison I would gladly do so, and so would the rest of our family." *Id.* at 35. A neighbor of almost forty years urged: "If I were in your place, I would try & find it in my heart to show some mercy & give the man a second chance." *Id.* at 37.

Oppressive sentences for first-time offenders require substantial public funding. As I noted in my concurrence in *Stockton,*

the taxpayers will pay more for incarceration ($17,900) per year than for a year of college education at most fine, private colleges. *Stockton,* 968 F.2d at 721. Is it worth it?

I write separately here to ask this question: Do the draconian sentences for first offenders demanded by the Guidelines make any sense in the face of strong evidence that a prisoner could be rehabilitated rather than virtually destroyed by a lengthy incarceration, as here?