988 F.2d 124
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Brandon MORRISON, Clarence Morrison, Defendants-Appellants.
 Nos. 92-10121, 92-10122.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 17, 1992.
Decided March 5, 1993.
 
 Appeal from the United States District Court for the District of Arizona; No. CR-90-373-PHX-RGS, Roger G. Strand, District Judge, Presiding.
 D.Ariz.
 AFFIRMED.
 Before WILLIAM A. NORRIS, BEEZER and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Clarence and Brandon Morrison appeal their convictions upon conditional guilty pleas to two counts of possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). They contend that the district court erred by denying them a "Franks hearing" to determine whether the search warrant affidavit was materially flawed for purposes of their motion to suppress, and that the affidavit underlying the search warrant did not establish probable cause to believe that items to be searched for and seized constituted violations of the customs laws. We affirm.
 
 
 3
 I. Facts.
 
 
 4
 Through several interviews with a confidential source, conducted between August 30 and September 24, 1990, United States Customs Service Agent Victor Karshner obtained information concerning the importation of ephedrine, a precursor chemical used to manufacture methamphetamine. The informant had been arrested for importing one hundred kilograms of ephedrine from Amsterdam, Netherlands, via London, England, which he claimed was obtained pursuant to an agreement with Morrison and others to assist them in manufacturing methamphetamine. ER E:26-27. During the interviews, the informant told Agent Karshner that Clarence Morrison supervised the operation of a multi-state organization that manufactured methamphetamine. He explained that as part of his operation, Morrison "imports into the United States an essential precursor chemical Ephedrine." ER B:6.
 
 
 5
 The informant also told Karshner that Morrison resided in Lake Havasu City, Arizona and rented a mini-warehouse at a storage facility there under the name Allan West. He claimed to have accompanied Morrison to the storage unit in November, 1989, in order to assist him in removing glassware used in the manufacturing of methamphetamine. He said that Morrison used a house north of Larue, Texas for manufacturing methamphetamine.
 
 
 6
 After his interviews with the confidential source, Agent Karshner sought corroboration of the information obtained. He located the house in Larue and found evidence indicative of methamphetamine manufacturing, including a strong chemical odor and walls covered with styrofoam that appeared to have melted from exposure to chemicals. Agent Karshner also confirmed that Morrison was on probation for an offense in California and resided in Lake Havasu City, Arizona.
 
 
 7
 After this preliminary check on the informant's story, Karshner contacted Arizona customs agents and informed them of his findings. The agents then conducted surveillance of Morrison's Lake Havasu home and observed him going to a storage facility in town and entering a particular locker. During the course of their surveillance on September 18, 1990, agents saw Morrison take a cardboard box into his locker at the storage facility and subsequently depart with a large round cardboard container in the bed of his pickup truck. The container was not in the truck before Morrison arrived at the storage facility. The truck was registered in California to Clarence Morrison.
 
 
 8
 Further investigation revealed that the locker was rented under the name "Allan West," and that the renter listed a nonexistent address and a pay phone telephone number. Customs agents increased their surveillance efforts and followed Morrison through the state of Arizona to an area near Clovis, New Mexico. Several cardboard boxes were observed in the bed of Morrison's truck. Morrison eventually lost the agents by engaging in various counter-surveillance maneuvers, but he turned up on September 24, 1990, in the state of Texas, near Dallas. At that time, customs agents did not observe any containers in the bed of the truck. That same day, Agent Karshner interviewed a second confidential source, who informed him that Morrison contacted him within the past three days and told him that he had been carrying glassware to Texas but had to dispose of it in New Mexico because he thought he was being followed and feared being arrested.
 
 
 9
 Customs Agent Allaire, based in Flagstaff, Arizona, used the above information to obtain a search warrant for the storage locker at the Lake Havasu storage facility. After considering the application and affidavit for the warrant, United States Magistrate Stephen Verkamp authorized the requested search warrant. The warrant was executed and items were seized. A number of additional search warrants were issued on the basis of the original affidavit and other information obtained in the subsequent searches.
 
 
 10
 An indictment was filed on October 24, 1990, charging Clarence and Brandon Morrison each with two counts of possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1). Initially, both pleaded not guilty to each count. The defendants filed motions to suppress evidence and a motion for issuance of a writ of habeas corpus ad testificandum seeking to have John Anthony Robinson,[1] allegedly Agent Karshner's first confidential source, presented before the court to give testimony on the motion to suppress evidence. The government opposed these motions and also filed a motion to quash the witness subpoena for Agent Karshner. The government's motion was granted and both of defendants' motions were denied. After their motion to suppress evidence was denied, the Morrisons pleaded guilty as charged on September 10, 1991. A statement of issues reserved for appeal was lodged with the court at that time.
 
 
 11
 On February 3, 1992, the district court sentenced the defendants. Clarence Morrison received 292 months on each count, sentences to run concurrently. Brandon Morrison received 240 months on each count, sentences to run concurrently. Clarence and Brandon also received terms of five and ten years supervised release, respectively.
 
 
 12
 II. Analysis.
 
 
 13
 A. Franks hearing.
 
 
 14
 The Morrisons challenge the district court's denial of their request for a Franks hearing. Franks v. Delaware, 438 U.S. 154 (1978). They claim that the omission of the confidential source's criminal history as well as other proffered evidence entitled them to an evidentiary hearing to determine whether the magistrate's finding of probable cause to support the search warrant was based on a materially flawed affidavit. In particular, they requested the testimony of the alleged informant, John Anthony Robinson, and Agent Karshner. The district court denied the requests.
 
 
 15
 The decision of a district court not to hold a Franks hearing is reviewed de novo. United States v. Homick, 964 F.2d 899, 904 (9th Cir.1992). A district court's findings regarding omissions and misrepresentations in affidavits supporting a search warrant are reviewed for clear error, but a determination of whether such omissions and misrepresentations were material to a determination of probable cause is reviewed de novo. United States v. DeLeon, 979 F.2d 761, 763 (9th Cir.1992).
 
 
 16
 When preliminary evidentiary hearing is sought to determine whether a facially valid warrant contains false statements, the defendant must make a substantial preliminary showing that the affidavit contains intentionally or recklessly false statements, and that the affidavit cannot support a finding of probable cause without the allegedly false information. Id. (discussing Franks v. Delaware, 438 U.S. 154 (1978)). This rule has been interpreted to apply to intentional or reckless omissions of facts as well. See United States v. Stanert, 762 F.2d 775, 780-81, amended, reh'g denied, 769 F.2d 1410 (9th Cir.1985). The appropriate inquiry here is whether the affidavit, supplemented by the omitted information, still supports a finding that probable cause exists. DeLeon, 979 F.2d at 764; United States v. Evans, 928 F.2d 858, 862 (9th Cir.1991).
 
 
 17
 Probable cause is determined by deciding "whether, given all the circumstances set forth in the affidavit [ ], including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983).
 
 
 18
 The Morrisons proffered the following "omissions" to support their position that no probable cause existed: (1) Robinson's statements were made while he was being held in custody pending the disposition of a case in which he was charged with an offense for which he was subject to a ten year prison term and a $30,000 fine; (2) for his cooperation, Robinson was promised and given a forty month sentence and no fine; (3) Agent Karshner knew that Robinson had an extensive criminal history; and (4) agents had not seen a health club near the storage facility in Lake Havasu. The district court reviewed Robinson's criminal history in camera and determined that it did not undermine the finding of probable cause. In addition, the court ruled that when the omissions are considered along with the rest of the information contained in the affidavit, probable cause still existed.
 
 
 19
 Although the proffered omissions may be relevant to the determination of probable cause, the affidavit in support of the warrant to search the storage locker, supplemented by the omitted information, would still be sufficient to support a finding of probable cause. The Morrisons attacked the affidavit primarily on the ground that the informant was not reliable. While Robinson's criminal history may have given the magistrate reason to doubt his credibility, the corroboration of the information Robinson provided was sufficient to overcome these doubts and support a finding of probable cause. In particular, Robinson's claims that Morrison was on parole for an offense in California and that Morrison rented a storage unit in Lake Havasu under the name Allan West were verified by independent investigation. Robinson also knew Morrison's correct home address, phone number, and California driver's license number. The only claim that wasn't consistent with the findings of the agents was that the storage facility was near a health club. This is not substantial, especially since Robinson's alleged trip to the storage facility took place ten months earlier. The district court properly dismissed the Morrisons' motion for a Franks hearing because they failed to make a substantial preliminary showing.
 
 
 20
 B. Customs Jurisdiction.
 
 
 21
 The Morrisons claim that the evidence obtained pursuant to the initial search warrant should have been suppressed because the affidavit did not support a finding of probable cause to believe items to be searched for and seized constituted a violation of customs laws. Whether there was probable cause to believe that an importation violation has occurred, and that evidence of such violation will be found on a particular premises, is a mixed question of law and fact reviewed de novo. See United States v. Mondello, 927 F.2d 1463, 1470 (9th Cir.1991) (de novo review for determining whether customs agents had reasonable suspicion to board defendant's plane); United States v. Dozier, 844 F.2d 701, 706 (9th Cir.), cert. denied, 488 U.S. 927 (1988).
 
 
 22
 Customs agents, unlike state or local police, are not "general guardians of the public peace." United States v. Jackson, 423 F.2d 506, 508 (9th Cir.), cert. denied, 400 U.S. 823 (1970). Their authority to conduct searches is limited by statute. The scope of customs agents' authority to conduct searches is set forth in 19 U.S.C. § 1595. The statute provides, in relevant part:
 
 
 23
 (a)(1) If any officer or person authorized to make searches and seizures has probable cause to believe that--
 
 
 24
 (A) any merchandise upon which the duties have not been paid, or which has been otherwise brought into the United States unlawfully;
 
 
 25
 (B) any property which is subject to forfeiture under any provision of law enforced or administered by the United States Customs Service;
 
 
 26
 * * *
 
 
 27
 is in any dwelling house, store, or other building or place, he may make application, under oath, to any justice of the peace, to any municipal, county, State, or Federal judge, or to any Federal magistrate, and shall thereupon be entitled to a warrant to enter such dwelling house in the daytime only, or such store or other place at night or by day, and to search for and seize such merchandise or other article described in the warrant.
 
 
 28
 19 U.S.C. § 1595(a)(1). The issue here is whether the affidavit supported a finding of probable cause to believe that the search of the storage locker would turn up items that constituted violations of laws within the jurisdiction of United States Customs agents.
 
 
 29
 The Morrisons contend that the only support for Customs jurisdiction in the affidavit is the confidential source's statement that Clarence Morrison, as part of his business of manufacturing methamphetamine, "imports into the United States an essential precursor chemical Ephedrine." ER B:6. This statement is sufficient to support the customs agents' authority to conduct the search if it is considered reliable. The statement cannot be judged in isolation to determine probable cause. The "totality of the circumstances" test articulated by the Supreme Court in Illinois v. Gates applies here. As discussed above, the informant's reliability was established by substantial corroboration. The fact that the assertion that ephedrine was being imported was not specifically corroborated in the affidavit is not dispositive. The magistrate properly determined that the corroboration of other claims made by the informant was a sufficient basis for believing the claim concerning importation of ephedrine. When the affidavit is considered as a whole, it supports a finding of probable cause to search the storage locker for evidence of violations of customs laws. The convictions are
 
 
 30
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The record refers to this alleged informant as both John Anthony Robinson and John Anthony Robertson. To be consistent with the district court, we refer to him as Robinson