56 F.3d 73
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Stanley W. AKERS, Jr., Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gary Patrick CALLAHAN, Defendant-Appellee,
 Nos. 93-10325, 93-10399.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 12, 1994.*
Decided May 22, 1995.
 
 Appeals from the United States District Court, for the District of Arizona, DC Nos. CR-89-00178-6-RGS, DC No. CR-89-00178-RGS; Roger G. Strand, District Judge, Presiding.
 D.Ariz.
 AFFIRMED.
 Before: BOOCHEVER, NORRIS, and HALL, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 I. Motion to withdraw as counsel
 
 2
 Akers' appointed counsel on appeal has filed a brief requesting leave to withdraw under Anders v. California, 386 U.S. 738 (1967). The brief satisfies Anders' requirements. Counsel states that he has reviewed the record in Akers' case as well as the codefendants' files. Akers did not file a brief in response.
 
 
 3
 We have "made [our] own examination of the record to determine whether counsel's evaluation of the case was sound." Penson v. Ohio, 488 U.S. 75, 82-83 (1988). We have also reviewed the record to discern whether there are arguable issues not raised by counsel's Anders brief. See United States v. Aldana-Ortiz, 6 F.3d 601, 602 n.1 (9th Cir. 1993) (per curiam) (appeals court must search independently for issues not raised by counsel).
 
 
 4
 We find that there are no legal issues that are arguable on their merits. No appointment of substitute counsel is necessary. We therefore grant Akers' counsel's motion to withdraw and dismiss the appeal, affirming Akers' sentence and conviction.
 
 II. Right to speedy trial
 
 5
 Callahan argues that the government violated Callahan's Sixth Amendment right to a speedy trial by its delay in notifying the court of his attorneys' conflict of interest. Callahan moved to dismiss the indictment on speedy trial grounds in the district court. [Ser tab 11 pp. 17-18] This court reviews de novo the district court's denial of the motion to dismiss based upon the Sixth Amendment right to a speedy trial, and reviews the findings of fact for clear error. United States v. Beamon, 992 F.2d 1009, 1012 (9th Cir. 1993).
 
 
 6
 To determine whether Callahan's speedy trial right was violated, four separate inquiries must be balanced: "whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result." Doggett v. United States, 112 S. Ct. 2686, 2690 (1992) (citing Barker v. Wingo, 407 U.S. 514, 530 (1972)). Prejudice may be presumed when the delay in trial is excessive, and the importance of such presumed prejudice increases with the length of delay. See Doggett, 112 S. Ct. at 2693; United States v. Shell, 974 F.2d 1035, 1036 (9th Cir. 1992). "[W]hen the defendant seeks to 'avoid detection by American authorities' and any post-indictment delay can be attributed to him, he waives the right to a speedy trial." United States v. Sandoval, 990 F.2d 481, 483 (9th Cir.) (quoting United States v. Wangrow, 924 F.2d 1434, 1437 (8th Cir. 1991)), cert. denied, 114 S. Ct. 218 (1993); see United States v. Aguirre, 994 F.2d 1454, 1456 n.3 (9th Cir.) ("If the defendant is culpable in causing the delay--such as when he actively evades prosecution--the prejudice growing from the delay he caused cannot be weighed in his favor."), cert. denied, 114 S. Ct. 645 (1993).
 
 
 7
 Callahan claims his speedy trial right was violated by the government's delay in notifying the court of Waltz's agreement to cooperate with the government, which caused a conflict requiring the appointment of new counsel for Callahan. Callahan argues that this delay was caused by the government in bad faith and was presumptively prejudicial.
 
 1. Length of delay
 
 8
 To trigger a speedy trial analysis, Callahan must first allege that the delay he suffered was more than ordinary delay, i.e. was "presumptively prejudicial." Doggett, 112 S. Ct. at 2690. Delays approaching one year have generally been found to be presumptively prejudicial for the purpose of beginning the speedy trial inquiry. See id. at 2691 n.1. On appeal, Callahan first claims the delay began in March 1991, when Waltz initially approached the FBI to offer his cooperation, and extends to June 25, 1992, when the conflict was disclosed. But Callahan ignores that until his extradition on September 28, 1991, he was a fugitive in New Zealand. The district court found that Callahan's extradition was not complete until November, 1991 [SER tab 11 p. 18], and Callahan does not attempt to show that factual determination was clearly erroneous. Excluding the period during which Callahan was attempting to evade the authorities from the speedy trial analysis, the longest delay Callahan can claim is from November 1991 to June 1992, a period of eight months. That is well below the one-year period for a presumption of prejudice, although an examination of the other factors may be required nevertheless. See United States v. Vassell, 970 F.2d 1162, 1164 (2d Cir.), cert. denied, 113 S. Ct. 627 (1992) (eight month delay may meet standard for presumption of prejudice).[1]
 
 2. Responsibility for the delay
 
 9
 The government was primarily responsible for the eight-month delay in advising the court of the conflict after Callahan's return to the United States.
 
 3. Assertion of right to speedy trial
 
 10
 Callahan raised the issue in a motion before the district court.
 
 4. Prejudice as result of the delay
 
 11
 Callahan does not show actual prejudice from the delay in his trial, other than a general assertion that his pretrial incarceration impaired his defense. The district court prevented Waltz from testifying to any information that he learned from Callahan's attorney. [SER tab 11 p. 16] The Supreme Court has recognized, however, that in some cases "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." Doggett, 112 S. Ct. at 2693. If "the Government ... intentionally [holds] back in its prosecution of [the defendant] to gain some impermissible advantage at trial ... official bad faith in causing delay will be weighed heavily against the government, ... and a bad-faith delay ... would present an overwhelming case for dismissal." Id.
 
 
 12
 The period for which the government arguably "held back" prosecution is at the most eight months. Even assuming, without deciding, that this delay could be attributed to "official bad faith," we find that eight months is not a long enough period to exempt Callahan from the requirement of showing actual prejudice from the delay. Callahan has shown no prejudice.
 
 
 13
 Examining the four aspects of a speedy trial inquiry, we agree with the district court that there was no constitutional violation of the right to a speedy trial. We therefore affirm the district court's refusal to dismiss the indictment.
 
 III. Motion to suppress
 
 14
 Callahan and Lindstrom filed a motion to suppress the evidence found in Lindstrom's Bisbee storage lockers. On appeal, Callahan claims that the motion to suppress was improperly denied, because the affidavits on which the search warrants were based omitted the fact that the white powdery substance found in the earlier search of a Scottsdale storage locker had been field-tested negative for cocaine. Callahan argues that if the omitted information had been supplied, the magistrate would have lacked probable cause to issue the warrant.
 
 
 15
 This court reviews for clear error the district court's findings regarding omissions and misrepresentations in affidavits supporting a search warrant. United States v. DeLeon, 979 F.2d 761, 763 (9th Cir. 1992). Whether an omission was material to the probable cause determination is a mixed question of law and fact reviewed de novo. Id. When a defendant challenges a warrant's validity "for deliberate or reckless omissions of facts that tend to mislead, the affidavit must be considered with the omitted information included." Id. at 764; see United States v. Garza, 980 F.2d 546, 551 (9th Cir. 1992).
 
 
 16
 Probable cause exists if "in light of all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place." DeLeon, 979 F.2d at 764. The affidavits, revised to include the omitted information, would have stated that Bartel told the FBI that Lindstrom had supplied him with cocaine from a storage locker in Scottsdale; when searched, the Scottsdale locker contained a white powdery residue which was not cocaine, but white powdery substances are used to cut cocaine and mask its odor; Lindstrom, who lived in Bisbee, also rented storage lockers there; in the agents' experience, drug traffickers often kept records and paraphernalia in storage lockers; and, in the case of Locker 64, a search of Locker 5 had uncovered a bicycle lock and a brown plastic bag identical to the locked bags containing the cocaine which Callahan seized at the border.
 
 
 17
 We find that, even containing the omitted information, the affidavits supported the magistrate's issuance of the search warrants. "'[O]nly a reasonable nexus between the activities supporting probable cause and the locations to be searched"' is required. United States v. Pitts, 6 F.3d 1366, 1369 (9th Cir. 1993) (quoting United States v. Ocampo, 937 F.2d 485, 490 (9th Cir. 1991)). A reasonable nexus "does not require direct evidence that the items listed as the objects of the search are on the premises to be searched. The magistrate must only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit." Id. (citations and quotations omitted). "In doubtful cases, th[is] ... court should give preference to the validity of the warrant." United States v. Johns, 948 F.2d 599, 602 (9th Cir. 1991), cert. denied, 112 S. Ct. 3046 (1992).
 
 
 18
 The magistrate knew from the affidavit that Lindstrom supplied Bartel with cocaine from a storage locker in Scottsdale; that Lindstrom lived in Bisbee and rented two storage lockers there; that drug traffickers commonly use storage lockers; and that further evidence linking Lindstrom with the drugs seized by Callahan was found when the first Bisbee storage locker was searched. With the affidavit revised to include the omission, the magistrate would also know that the Scottsdale storage locker contained a trunk with a white powder in it, which, while it was not cocaine, could be used in its distribution. That is enough to support a finding of probable cause to search the Bisbee storage lockers. See United States v. Appleby, 975 F.2d 1384, 1386 (8th Cir. 1992) (after excising false information, affidavit stating that defendant had been under investigation for illegal drug activity, had been arrested in a city where he rented storage space, and his rental of storage space was verified, was sufficient for the magistrate's finding of probable cause). We affirm the district court's conclusion that the omission did not invalidate the magistrate's finding of probable cause.
 
 IV. Role as organizer or leader
 
 19
 The presentence report recommended that Callahan's base offense level be increased by four levels under Guideline Sec. 3B1.1(a), as Callahan was the organizer of an "otherwise extensive" criminal activity. The district judge at sentencing halved the increase, adding two levels to the base offense level under Sec. 3B1.1(c), which authorizes such an increase when "the defendant was an organizer, leader, manager, or supervisor in any criminal activity" which involved less than five participants and was not otherwise extensive. See USSG Sec. 3B1.1(c) (Nov. 1988). Callahan challenges the two-level increase.
 
 
 20
 The district court's factual finding that Callahan was a leader or organizer is reviewed for clear error. See United States v. Fagan, 996 F.2d 1009, 1016 (9th Cir. 1993).
 
 
 21
 To be properly found an "organizer, leader, manager or supervisor" in the criminal activity, a defendant must have some control over other people involved in the offense, or must have been responsible for organizing others to carry out the crime. United States v. Hoac, 990 F.2d 1099, 1110 (9th Cir. 1993), cert. denied, 114 S. Ct. 1075 (1994). It is not enough simply to implement a transaction. See id. at 1111; United States v. Mares-Molina, 913 F.2d 770, 773-74 (9th Cir. 1990) (not enough to own business leasing warehouse where cocaine was unloaded).
 
 
 22
 The district court found that Callahan arranged for the initial storage and transportation of the cocaine, and supplied 42 kilograms to Bartel. [SER tab 15 pp. 14-16] The evidence at trial also showed that Callahan gave the cocaine to Waltz to store at his home; Callahan removed the cocaine a few days later and gave it to Lindstrom to give to Bartel; and Callahan met with Lindstrom and Bartel to convince Bartel to distribute the cocaine. [Red Br. pp. 29-30]
 
 
 23
 Callahan argues that Lindstrom, not he, was the leader in the distribution of the cocaine. Under Sec. 3B1.1, however, there may be more than one leader or organizer. United States v. Smith, 924 F.2d 889, 895 (9th Cir. 1991); USSG Sec. 3B1.1, comment. (n.3). The leader need not occupy a permanent hierarchical relationship with those he organizes. "An enhancement may be proper where ... a defendant organizes others in the commission of the criminal activity even though he does not retain a supervisory role over the other participants." United States v. Varela, 993 F.2d 686, 691 (9th Cir.) (as amended), cert. denied, 114 S. Ct. 232 (1993).
 
 
 24
 Callahan also argues that there is no evidence that he claimed a larger share of the drug proceeds. While a disproportionate share of the profit may be relevant to determining whether an individual is an organizer, see Sec. 3B1.1, comment. (n.3), it is not required.
 
 
 25
 We find the district court did not clearly err in finding that Callahan was a leader in the offense. Callahan supplied the cocaine to Waltz, arranged for its storage, moved it, gave it to Lindstrom, and met with Lindstrom and Bartel to arrange its distribution. Those facts are sufficient to support the district court's finding. Cf. United States v. Carvajal, 905 F.2d 1292, 1296 (9th Cir. 1990) (finding leadership role in single cocaine transaction where defendant instituted transaction with undercover agent, arranged for sale, contacted informant and told him to give money to a third party, and waited at third party's house for the money).
 
 V. Sentence enhancements
 
 26
 Callahan's final claim is that the district court engaged in impermissible "double counting" when it enhanced his sentence both for abuse of a position of trust and for possession of a firearm during a drug offense, as his position of trust (border patrolman) required that he carry the weapon while on duty.
 
 
 27
 The court did not enhance Callahan's sentence for the use of a gun during the commission of a drug offense. [Red Br. p. 31] Callahan does not point to any portion of the record where such an enhancement occurred, nor does his reply brief refute the government's assertion that there was no weapons enhancement. We therefore do not address this issue.
 
 CONCLUSION
 
 28
 We grant Akers' counsel leave to withdraw and AFFIRM Akers' conviction and sentence. We AFFIRM Callahan's conviction and sentence.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed. R. App. P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 Callahan also cites as delay another fifteen-month period, from his return from New Zealand in November 1991, until the beginning of trial in January 1993. [Blue Br. p. 16] This is not the appropriate period in which to claim prejudice from the government's delay in informing the court of the conflict. If the government had disclosed the conflict immediately upon his return from New Zealand, and new counsel had been appointed then, it still would likely have taken seven months for the new attorney to prepare for trial. Certainly, Callahan could not have been ready for trial immediately upon his extradition